Argued and submitted November 7, 1995, reversed and remanded in part;
otherwise affirmed March 5, 1997

Helen FRIEDRICH,
*Appellant,*

*v.*

Peter W. ADESMAN;
Robin H. Adesman, aka Robin H. Miller;
Brian Adesman and David Adesman,
*Respondents.*

(95-0508-L-E; CA A88695)

934 P2d 587

Kurt H. Knudsen argued the cause and filed the briefs for appellant.

Benjamin M. Bloom argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff appeals from a judgment dismissing her amended complaint for failure to state facts sufficient to constitute a claim. ORCP 21 A(8). Her complaint contains four claims, and she assigns error to the court's ruling regarding each claim. Under ORCP 21 A(8), we consider only the facts alleged, assuming them to be true and giving plaintiff the benefit of all reasonable inferences that arise from the allegations. *Glubka v. Long*, 115 Or App 236, 837 P2d 553 (1992). We affirm in part and reverse in part.

■   Plaintiff seeks approximately $71,000 in economic damages and $50,000 in noneconomic damages in her first three claims. Plaintiff's first claim is labeled "Failure to Exercise Reasonable Control over Minor Children." She alleges that she was employed by defendants as a nanny and that while caring for their five- and six-year-old children, she was injured. Defendants were not present at the time. According to plaintiff, the operative facts that give rise to liability are:

"4.

"* * * While in the kitchen, plaintiff observed the minor children caused water to be spilled from the cold-water dispenser on the outside door of defendants' refrigerator. The water spilled due to the children's willful, reckless and boisterous activities, which included banging the refrigerator and otherwise misusing the cold-water dispenser. Plaintiff dried the water spill completely, and admonished the children not to misuse the refrigerator again. Plaintiff then proceeded to the bathroom and shortly thereafter returned to the kitchen. As plaintiff proceeded toward the kitchen sink, she was distracted by the minor children, who were then seated at a table and were arguing and throwing food. As she continued to proceed toward the sink, plaintiff slipped and fell in front of the refrigerator on ice that had not been present when she dried the water spill. The ice had been dropped on the floor by the minor children while plaintiff was out of the room, despite plaintiff's admonitions to the minor children against misusing the refrigerator.

"* * * * *

"6.

"The presence of the ice on the kitchen floor in front of the refrigerator was the direct result of the reckless and *willful* activities of the minor children, * * *.

"7.

"[Defendants] had previous knowledge, or should have known of the dangerous tendencies, mischievous disposition and uncontrolled and aberrant behavior of the minor children, and were aware or should have been aware of specific acts of a similar nature to that committed against plaintiff, including *kicking adults, incessantly and maliciously disobeying adults, willfully breaking expensive toys, threatening to have [defendants'] employees fired if they did not obey the minor children's commands and misusing electrical and mechanical devices.*

"8.

"[Defendants] knew or should have known that the minor children would misuse the refrigerator, but [they] took no steps to control such use or instruct the children regarding proper use and safety measures, and negligently entrusted the minor children to such use. [Defendants] further failed to take adequate steps to secure the refrigerator or protect the refrigerator from the misuse of the minor children or to warn plaintiff of the propensity of the minor children to misuse the refrigerator." (Emphasis supplied.)

Plaintiff argues that the above allegations state sufficient facts to constitute a claim under *Gossett v. Van Egmond*, 176 Or 134, 155 P2d 304 (1945), and the *Restatement (Second) of Torts* § 316 (1965). *Gossett* is a case in which a father negligently permitted his son, whom he knew to be a reckless and incompetent driver, to operate the father's vehicle. The plaintiff was injured as a result. The court relied on the *Restatement*[1] for the general rule that a parent may be

---

[1] *Restatement (Second) of Torts* § 316 provides:

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so

held liable when the negligent entrustment of an object to the child makes it possible for the child to gain control over an instrumentality that may become dangerous to others in his hands.

In *Davis v. DuBosch*, 283 Or 363, 367, 583 P2d 1133 (1978), the court held that, regarding a claim for the failure to exercise reasonable control over a minor child, the failure of the complaint to allege that the defendants had knowledge of their ability to control their child and the opportunity to exercise that control was fatal to the plaintiff's claim. Plaintiff's claim suffers from the same defect. It alleges that defendants were not present when the ice was left on the floor, and there is no allegation that they had the opportunity to control their children in regard to the conduct that is the basis for plaintiff's claim of liability. The trial court did not err in granting defendants' motion as to the first claim.

■ Plaintiff labels her second claim, "Failure to Provide a Safe Place to Work." She alleges that defendants "were under a duty to provide a safe, sufficient and suitable premises for plaintiff to work," and that defendants "breached these duties by failing to take adequate precautions to safeguard plaintiff and the premises against the acts and omissions of the minor children or to warn plaintiff of the dangerous propensities of the minor children." She also incorporates by reference the allegations made in her first claim. She argues that, under the common law, an employer has a duty to provide a reasonably safe place for a domestic servant to work and to warn the servant of any dangerous conditions at the work place. *Ritter v. Beals et al*, 225 Or 504, 517, 358 P2d 1080 (1961).

■ Like any other species of negligence, the common-law rule regarding providing a safe work place by controlling

---

conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

"(a) knows or has reason to know that he has the ability to control his child, and

"(b) knows or should know of the necessity and opportunity for exercising such control."

the conduct of others contemplates that the putative tortfeasor has the opportunity to prevent the risk of harm that results in the injury. Although it is not necessary that the person be able to foresee the exact harm that occurs, the duty to prevent harm or to warn of it does not arise until there is something that would put a reasonable person on notice that a generalized risk of harm exists and that there is an opportunity to prevent the risk. *Uihlein v. Albertson's, Inc.*, 282 Or 631, 641, 580 P2d 1014 (1978).

According to plaintiff's complaint, the acts that put defendants on such notice was their knowledge that their children had kicked and disobeyed adults, broken toys, threatened to have employees fired by their parents and misused electrical and mechanical devices. However, there is no allegation in the complaint that defendants knew that their children previously had used ice or any other substance in an effort to cause someone to fall or had acted in some other way to create a hazardous, concealed condition that could result in injury. Even the allegation that defendants knew that their children had kicked adults in the past does not allege the kind of conduct that would cause a reasonable person to foresee that his child might undertake to cause someone to slip and fall by putting a slippery substance on the floor and therefore would place the parent under a duty to act to prevent such an occurrence. The overtness of the risk of harm that results from a child kicking an adult is much different in nature from the creation of a hidden "trap." Defendants' duty to provide a safe work place extends only to those generalized risks of harm that they would have reasonably been able to anticipate and had the ability and the opportunity to control. Because there are no allegations that they were present at the time of the fall or had prior knowledge that their children might act as alleged, the trial court did not err in granting defendants' motion as to the second claim.

■        In her third claim for "Premises Liability," plaintiff realleges the facts in her first claim and asserts that defendants had a duty "to exercise reasonable care to protect [her] from unreasonable risks of harm at the premises and to take reasonable steps to afford reasonable protection from the negligent, reckless and intentional acts of others including

the minor children." Her allegations conclude that defendants breached that duty by "failing to take adequate precautions to safeguard plaintiff" or "to warn plaintiff of the dangerous propensities of the minor children." Plaintiff relies on the general rule of premises liability set forth in *Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984):

> "In general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit. The possessor must exercise the standard of care above stated to discover conditions of the premises that create an unreasonable risk of harm to the invitee. The possessor must exercise that standard of care either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm."

The focus of plaintiff's third claim appears to be slightly different from that of her second claim. In the second claim, the focus was more on the conduct of the children. In this claim, the focus appears to be on the condition of the floor and the failure of defendants to prevent that condition or warn of it. Nevertheless, the analysis regarding the second claim also applies here. There are no facts alleged from which it can reasonably be inferred that defendants were or should have been aware of the condition of the floor or could have taken any measures to prevent it. Again, the specific condition of the floor falls outside the generalized risk of harm to be anticipated by defendants as a result of their children's prior conduct. No error was committed by the trial court regarding the dismissal of the third claim.

In her final claim, plaintiff alleges a theory that she has entitled "Statutory Liability of Parents for Torts by Children." We understand her theory to be that defendants are liable under ORS 30.765(1). That statute provides, in part:

> "In addition to any other remedy provided by law, the parent or parents of an unemancipated minor child shall be liable for actual damages to person or property caused by any tort intentionally or recklessly committed by such child."

Under the statute, a parent's liability is limited to $7,500.

In the claim, plaintiff again incorporates the allegations in her first claim and also alleges, "[defendants'] minor children recklessly or intentionally caused the ice to fall to

the floor and to remain on the kitchen floor, and recklessly or intentionally caused injury to plaintiff." Plaintiff argues that she has alleged that a battery was committed by the children and that, under the statute, defendants are liable for their tort. "To constitute liability for a battery, the conduct which brings about the harm must be an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact * * *." *Bakker v. Baza'r, Inc.*, 275 Or 245, 249, 551 P2d 1269 (1976). It is not necessary that there be direct contact between the tortfeasor and the injured person. The force resulting in the contact may be applied directly, indirectly or as a consequence of the actions of the tortfeasor so long as it is the proximate cause of the tortfeasor's conduct. *Denton v. Arnstein*, 197 Or 28, 45, 250 P2d 407 (1952).

Defendants rely on our holding in *Alexander v. Rask*, 90 Or App 379, 379, 752 P2d 344 (1988), *rev den* 306 Or 527, 761 P2d 923 (1988), for the proposition that an inadvertent contact is not a battery because the actor intends neither the harm nor the contact. They argue that the complaint alleges only that the children intentionally caused the ice to fall on the floor and that there is no allegation that they intended the ice to cause plaintiff to fall. Defendants' argument ignores the allegation that the children "intentionally caused injury to plaintiff." When that allegation is read with the allegation that the presence of the ice on the floor was the result of "the wilful activities" of the children, it could be inferred that the children acted volitionally to place the ice on the floor with the intent to cause plaintiff to fall.[2] Those allegations suffice to allege a claim of battery for which defendants could be held liable under the statute. The trial court erred in dismissing the fourth claim under ORCP 21 A(8).

Reversed and remanded as to the fourth claim; otherwise affirmed.

---

[2] The parties agree, despite plaintiff's allegation, that plaintiff need not allege and prove that the children intended to harm plaintiff. It is enough, for purposes of the battery, that they intended to cause her to fall.