Argued and submitted July 30, 2012, reversed and remanded February 13, 2013

Scott HUGHES,
*Plaintiff-Appellant,*
*v.*
CITY OF PORTLAND,
*Defendant-Respondent.*
Multnomah County Circuit Court
100913654; A149379

296 P3d 642

Theresa M. Kohlhoff argued the cause for appellant. With her on the brief was Kohlhoff & Welch.

Harry Auerbach, Chief Deputy City Attorney, argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

Plaintiff brought this personal injury action against defendant, City of Portland, alleging that he was injured in a four-vehicle accident caused by one of defendant's employees. The trial court granted summary judgment for defendant after ruling that plaintiff had failed to give defendant timely notice of his claim under the Oregon Tort Claims Act (OTCA). Plaintiff appeals, arguing first that defendant's motion for summary judgment was not timely filed. We reject that assignment of error without discussion. On the merits, plaintiff argues that defendant had actual notice of the claim under ORS 30.275(6) and, alternatively, that the notice requirement was satisfied under ORS 30.275(3)(d) because defendant paid part of the claim. We agree, at least in part, with plaintiff's latter argument. The summary judgment record includes evidence that defendant paid part of plaintiff's claim. It follows that there is a genuine issue of material fact that precludes summary judgment. We therefore reverse.

When reviewing a grant of summary judgment, we view the facts in the light most favorable to the nonmoving party—in this case, plaintiff. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). On November 20, 2008, James Hamel, one of defendant's employees, was driving a truck owned by defendant on a highway when traffic slowed. Hamel hit the truck in front of him, pushing that truck into the car ahead of it, which, in turn, hit a pickup truck. Plaintiff was a passenger in the pickup, which was driven by Michael Bruce. Plaintiff sustained substantial injuries as a result of the accident.

Bruce's pickup was insured by State Farm Insurance. Within a few days after the accident, State Farm opened personal injury protection (PIP) claims for Bruce and plaintiff. On December 1, 2008, State Farm sent defendant's risk-management office a letter providing the date, location, and a brief description of the accident and stating, "We are handling this claim on behalf of our insured and at its conclusion will be seeking reimbursement from you for our expenditures." That letter listed Michael Bruce as State Farm's insured, but did not identify plaintiff as a claimant. However, four

days later, State Farm sent another letter listing the same claim number and date of loss, and identifying plaintiff as the injured party. The letter also stated that it served as notice to defendant of State Farm's "subrogation or reimbursement rights under Personal Injury Protection" and requested reimbursement for any payments that it made under the PIP claim. State Farm also sent defendant a similar letter requesting reimbursement for payments related to Bruce's PIP claim. Neither letter indicated that State Farm had actually made any payments under the PIP claims; both letters included a list of PIP claim types and stated that the dollar amounts were "pending."

Defendant's Risk Management Division assigned the case to Randy Stenquist, a claims analyst, who created a risk-management file related to the accident. Stenquist's handwritten file notes indicate that he and State Farm were in contact at least twice in 2009, on March 31 and May 20. The notes from the latter contact state that plaintiff's PIP claim was still open and that, to date, $532.11 had been paid under the claim. Other documentation in the summary judgment record confirms that the payment on plaintiff's claim was for medical expenses.

On January 28, 2010, State Farm sent defendant a letter seeking to recover a total of $636.11. Handwritten notes—presumably Stenquist's—on the copy of the letter in the record state that $532.11 of that total was related to plaintiff's claim and the remaining $104.00 was related to Bruce's claim. Eight days later, defendant issued a check to State Farm for $636.11.

Plaintiff contacted Stenquist to discuss his claim for the first time on March 24, 2010. According to Stenquist's notes, they discussed the fact that the statute of limitations on any legal claim by plaintiff would elapse that November. Stenquist also indicated that he had mailed plaintiff a claim form. Plaintiff filled out the form and returned it to defendant in April 2010. Defendant did not pay any additional amounts in connection with plaintiff's claim.

Plaintiff brought the present negligence action in September 2010, seeking more than $125,000 in damages. In its answer, defendant asserted as an affirmative defense that plaintiff had failed to give timely tort-claim notice as required by ORS 30.275. Defendant later moved for summary judgment on that ground. In response to defendant's motion, plaintiff argued that defendant had actual notice of the claim and, alternatively, that the notice requirement was satisfied by defendant's payment of the PIP claim. The trial court agreed with defendant that plaintiff had not given timely notice. Accordingly, it granted the motion and entered a judgment dismissing plaintiff's claim with prejudice.

On appeal, plaintiff renews the arguments that he made below. Because it is dispositive, we discuss only plaintiff's contention that the notice requirement in ORS 30.275 was satisfied by defendant's payment of the PIP claim. The "payment" provision is found at ORS 30.275(3)(d). Because the context of the provision is necessary to the proper construction of it, we quote the statute at some length:

"(1)  No action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section.

"(2)  Notice of claim shall be given within the following applicable period of time, not including the period, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity:

"(a)  For wrongful death, within one year after the alleged loss or injury.

"(b)  For all other claims, within 180 days after the alleged loss or injury.

"(3)  Notice of claim required by this section is satisfied by:

"(a)  Formal notice of claim as provided in subsections (4) and (5) of this section;

"(b)  Actual notice of claim as provided in subsection (6) of this section;

"(c)  Commencement of an action on the claim by or on behalf of the claimant within the applicable period of time provided in subsection (2) of this section; or

"(d)  *Payment of all or any part of the claim by or on behalf of the public body at any time.*

"(4)  Formal notice of claim is a written communication from a claimant or representative of a claimant containing:

"(a)  A statement that a claim for damages is or will be asserted against the public body or an officer, employee or agent of the public body;

"(b)  A description of the time, place and circumstances giving rise to the claim, so far as known to the claimant; and

"(c)  The name of the claimant and the mailing address to which correspondence concerning the claim may be sent.

"* * * * *

"(6)  Actual notice of claim is any communication by which any individual to whom notice may be given as provided in subsection (5) of this section or any person responsible for administering tort claims on behalf of the public body acquires actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body."

(Emphasis added.) The subsection at issue here, ORS 30.275(3)(d), provides that the notice requirement is satisfied by "[p]ayment of all or any part of the claim * * *." At the outset, we must determine what the legislature intended by "the claim."

In *Flug v. University of Oregon*, 335 Or 540, 553-54, 73 P3d 917 (2003), the Supreme Court held that ORS 30.275(6)—which defines "actual notice"—requires a communication that warns of the plaintiff's intent to bring "a claim." The communication need not specify precisely *what* claim, although it must also describe the time, place,

and circumstances giving rise to "the claim"—that is, "the specific claim or claims that a plaintiff ultimately asserts." *Id.* at 553. Accordingly, as used in subsection (6), "a claim" refers only to *some* claim without specificity, and "the claim" refers to the claim or claims that the plaintiff ultimately asserts against the public body.

As a matter of statutory interpretation, we presume that, when the legislature uses the same term throughout a statute, it intends for it to have the same meaning throughout the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Nothing in the text, context, or legislative history undermines the assumption that "the claim" has the same meaning throughout ORS 30.275. *See Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 211, 179 P3d 633 (2008) (courts are not bound by the assumption that words have the same meaning in related statutory provisions "if an examination of the text and context of the statute reveals that the word, in fact, does have more than one meaning"). It follows that, under paragraph (3)(d), payment of all or any part of "the claim" refers to payment of all or part of the specific claim or claims that the plaintiff ultimately asserts against the public body.

Plaintiff had not yet made any claim against defendant when defendant reimbursed State Farm for the PIP benefits. The only claim defendant had before it was State Farm's request for reimbursement. Accordingly, the question is whether, by paying State Farm's requested reimbursement, defendant paid part of plaintiff's claim.

Defendant contends that it paid only *State Farm's* claim for reimbursement of PIP benefits, not any part of *plaintiff's* claim. In defendant's view, the two claims were entirely separate from each other. Defendant explains that, under ORS chapter 742, State Farm could choose between alternative ways of obtaining reimbursement of the PIP benefits that it had paid to, or on behalf of, plaintiff. Defendant asserts that the particular reimbursement remedy that State Farm elected did not depend on plaintiff having a claim against defendant and, therefore, that reimbursement request was not part of plaintiff's claim.

The alternative remedies to which defendant refers are set out in three statutes governing PIP insurance. Under ORS 742.534, a "motor vehicle liability insurer whose insured is or would be held legally liable for damages for injuries sustained in a motor vehicle accident" must reimburse another insurer who furnished PIP benefits to the injured person if the PIP insurer requests reimbursement. Under ORS 742.536, if the injured person makes a written demand for damages or institutes a legal action for damages, the PIP insurer may elect to seek reimbursement "for benefits it has so furnished, out of any recovery under such claim or legal action, if the insurer has not been a party to an interinsurer reimbursement proceeding with respect to such benefits under ORS 742.534 ***." Under ORS 742.538, the PIP insurer can recover PIP benefits from the proceeds of any judgment or settlement that the injured person may obtain, and the insurer can require the injured person to bring an action against the tortfeasor. *See generally Providence Health Plan v. Winchester*, 252 Or App 283, 291-92, 288 P3d 13 (2012) (discussing PIP reimbursement alternatives).

Defendant acknowledges that, under ORS 742.536, there is only one claim—the injured person's. The same is true under ORS 742.538. However, defendant argues that, under ORS 742.534, the PIP insurer's request for reimbursement is distinct from the injured person's claim. Defendant contends that State Farm elected to make a claim directly against it, as a self-insurer, under ORS 742.534. Accordingly, defendant argues, when it "settled State Farm's claim, it paid only State Farm's claim, and not all or part of plaintiff's own claim." Again, the question before us is whether payment of a PIP insurer's request for reimbursement of PIP benefits is payment of part of the injured person's claim.

The answer is that it can be. An injured person who brings an action against a tortfeasor can, but is not required to, include in the prayer for relief damages for losses that were covered by PIP benefits that, in turn, were later reimbursed to the PIP insurer under ORS 742.534. *See Koberstein v. Sierra Glass Co.*, 65 Or App 409, 413, 671 P2d 1190 (1983), *rev den*, 297 Or 83 (1984) ("a plaintiff may plead and prove all of his special damages, even if he has received

PIP benefits and his insurer has received reimbursement from the liability insurer" under ORS 742.534); *see also Wynia v. Fick,* 162 Or App 365, 372, 986 P2d 625 (1999), *rev den,* 329 Or 590 (2000) (holding that the purpose of ORS 742.538(4), allowing a PIP insurer to compel the injured person to bring an action to recover PIP benefits from the tortfeasor, "was to protect the insurer against an insured who may be disinclined to pursue an action against a third-party tortfeasor because the insured has already recovered any losses through PIP benefits"); *Brus v. Goodell,* 119 Or App 74, 78, 849 P2d 552 (1993) (noting the plaintiff's "tactical choice not to plead and prove those damages"). In other words, the injured person's claim can include damages for losses that were compensated by PIP benefits.

If the injured person prevails and is awarded damages for losses that had been compensated by PIP benefits that were later reimbursed under ORS 742.534 by the tortfeasor's liability insurer, ORS 31.555 provides that the amount of the judgment against the tortfeasor is reduced:

> "(2) If judgment is entered against a party who is insured under a policy of liability insurance against such judgment and in favor of a party who has received benefits that have been the basis for a reimbursement payment by such insurer under ORS 742.534, the amount of the judgment shall be reduced by reason of such benefits in the manner provided in subsection (3) of this section.
>
> "* * * * *
>
> "(3)(b) The amount of any benefits referred to in subsection (2) of this section, diminished in proportion to the amount of negligence attributable to the party in favor of whom the judgment was entered and diminished to an amount no greater than the reimbursement payment made by the insurer under ORS 742.534, may be submitted by the insurer which has made the reimbursement payment, in the manner provided in ORCP 68 C(4) for the submission of disbursements."

Notably, under that statute, the jury's verdict is not reduced by reason of the reimbursement. Rather, the judgment is entered in the full amount of the verdict and then satisfied

in the amount of the PIP reimbursement (as diminished, if appropriate). *Wade v. Mahler*, 167 Or App 350, 358, 1 P3d 485, *rev den*, 331 Or 334 (2000). Even if the judgment is fully satisfied as a result of the PIP reimbursement, the plaintiff is the prevailing party, *id.*, which reinforces the conclusion that the plaintiff's losses that were compensated by PIP benefits remain part of the plaintiff's claim notwithstanding reimbursement under ORS 742.534. The claim does not disappear simply because the plaintiff's losses were fully covered by PIP benefits.

ORS 742.534 itself also supports the conclusion that a request for interinsurer reimbursement of PIP benefits may seek payment of part of the injured person's claim. Subsection (1) of that statute provides, in part:

> "Except as provided in ORS 742.544, every authorized motor vehicle liability insurer whose insured *is or would be held legally liable for damages for injuries* sustained in a motor vehicle accident by a person for whom personal injury protection benefits have been furnished by another such insurer * * * shall reimburse such other insurer for the benefits it has so furnished if it has requested such reimbursement * * *."

(Emphasis added.) A public body's reimbursement of PIP benefits under ORS 742.534 demonstrates that the public body is aware that an accident has occurred, that a particular person has suffered bodily injury as a result, and that the public body is alleged (at least by the PIP insurer) to be responsible for the accident. If the reimbursement is given voluntarily, it also constitutes an acknowledgement by the public body of its probable liability for the accident.[1] Either way, by the time the public body pays the reimbursement request, it has sufficient information to give it the opportunity and the incentive to investigate to determine whether the injured person intends to make a claim against it beyond

---

[1] Reimbursement of PIP benefits is not necessarily voluntary. If a tortfeasor's liability insurer denies that the tortfeasor is liable, a PIP insurer can compel arbitration of the liability issue. ORS 742.534(3). If the arbitrator concludes that the tortfeasor is liable, the liability insurer must make the reimbursement. In that instance, the reimbursement is neither an acknowledgement of liability nor, for purposes other than the reimbursement process, a binding determination of liability. *See* ORS 742.534(4) ("Findings and awards made in such an arbitration proceeding are not admissible in any action at law or suit in equity.").

the PIP reimbursement request. *See Smith v. Pernoll*, 45 Or App 395, 398, 608 P2d 590 (1980), *rev'd on other grounds*, 291 Or 67, 628 P2d 729 (1981) ("The policy behind the 180 day notice requirement is to afford the public body timely notice of the alleged tort to allow its officers an opportunity to investigate all matters promptly and ascertain the facts before they become stale.").

Defendant argues that treating payment of a request for reimbursement under ORS 742.534 as payment of part of the injured person's claim is inconsistent with another of the purposes of the notice requirement—namely, to allow self-insured public bodies to estimate their liability exposure so they can budget for claim payouts. Defendant asserts that, in this case, when it received State Farm's notice of claim on December 8, 2008, it knew that State Farm had paid $636.11 in medical expenses for plaintiff and Bruce. According to defendant, because it "had no notice of plaintiff's claim, it had no way of anticipating an extra $125,000 of potential liability exposure" when it reimbursed State Farm for the PIP benefits.

Although the legislative history confirms defendant's assertion that one of the purposes of the notice requirement is to allow self-insured public bodies to budget for anticipated liabilities, defendant reads too much into that purpose. The current notice provisions in ORS 30.275 were enacted as part of Senate Bill (SB) 86 in 1981, which was introduced in response to the perception that public bodies were using technical defects in tort claim notices as an excuse to reject meritorious claims. As initially proposed, that bill would have eliminated the notice requirement entirely. Various public bodies objected to eliminating the notice requirement, arguing in part that, without any notice, they would not be able to assess how much revenue they needed to collect and set aside for paying claims. The legislature ultimately rejected the original version of SB 86 in favor of liberalizing the notice requirements and eliminating technical aspects that created traps for unwary claimants. And those liberalized notice requirements do not, contrary to defendant's implicit suggestion, require a claimant to give the public body such detailed information that the public

body can determine the extent of its potential liability from the face of the notice. To the contrary, "formal notice" requires only a written statement that "a claim for damages is or will be asserted" and a "description of the time, place and circumstances giving rise to the claim, so far as known to the claimant[.]" ORS 30.275(4). Similarly, "actual notice" requires "any communication" that gives the public body "actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim * * *." ORS 30.275(6). Neither of those methods of notice requires that the public body receive sufficient information to anticipate its potential liability exposure without further investigation. Only one method of giving notice *might* satisfy the purpose that defendant notes without further investigation: commencement of an action on the claim. ORS 30.275(3)(c). Under ORCP 18 B, if recovery of money or damages is demanded, "the amount thereof shall be stated" in the pleading. But, because general damages are not required to be pleaded with specificity, *State Farm Fire and Casualty v. American Family Mutual*, 242 Or App 60, 65, 253 P3d 65 (2011), even that method of giving notice does not necessarily allow a public body to determine its potential liability exposure without further investigation.[2]

In short, the legislature responded to the objecting public bodies' concern simply by retaining the requirement that claimants give notice, apparently concluding that ensuring an *opportunity* to investigate potential claims sufficiently addressed the public bodies' concerns. We cannot read into the statute a requirement that partial payment of a claim satisfies a public body's need for notice only if, when the public body made the payment, it had enough information to

---

[2] We note that, as originally enacted in 1967, ORS 30.275 required that a tort claim notice include a statement of the amount of compensation or other relief demanded, although failure to include that information did not invalidate the notice. The 1967 version of the statute provided that, if the amount of compensation or other relief demanded was not included in the notice, the claimant was required to "furnish full information regarding the nature and extent of the injuries and damages within 30 days after written demand by the public body." The legislature eliminated the latter requirement in 1969. Or Laws 1969, ch 429, § 3. With the 1981 amendment, it eliminated entirely the requirement that the notice include the amount of compensation or other relief demanded. Or Laws 1981, ch 350, § 1.

determine the extent of its exposure. We reject defendant's argument to the contrary.

As noted, this case is before us on appeal from the trial court's grant of summary judgment for defendant. When considering a motion for summary judgment, the court "shall grant the motion if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C. Whether the losses for which PIP payments were made overlap with the losses for which plaintiff seeks tort damages is a question of fact. *Brus*, 119 Or App at 76. In this case, it is not entirely clear from the summary judgment record whether the prayer for relief in plaintiff's complaint includes the PIP benefits that defendant reimbursed to State Farm. In the operative complaint, plaintiff sought $41,483.16 for medical expenses, an unspecified amount for wage and pension loss, and noneconomic damages in an amount not to exceed $85,000. A factfinder could infer that the economic damages that plaintiff sought from defendant included the medical expenses that were covered by the PIP benefits for which defendant had reimbursed State Farm. That is, a factfinder could infer that defendant had paid part of plaintiff's claim. It follows that the trial court erred in granting summary judgment for defendant.

Reversed and remanded.