Argued and submitted November 4, 2015, reversed and remanded June 21, 2017

Johnnie HUMPHREY,
individually,
*Plaintiff-Appellant,*

*v.*

OREGON HEALTH & SCIENCES UNIVERSITY,
aka OHSU, a quasi-public entity;
Kevin Arce, D.M.D., individually; and
Michael Wilkinson, D.M.D., individually,
*Defendants-Respondents.*

Multnomah County Circuit Court
130710001; A158052

398 P3d 360

Lisa T. Hunt argued the cause for appellant. With her on the briefs was Law Office of Lisa T. Hunt, LLC.

Janet M. Schroer argued the cause for respondent. With her on the brief were Ruth C. Rocker and Hart Wagner LLP.

Before Lagesen, Presiding Judge, and Garrett, Judge, and Schuman, Senior Judge.

**GARRETT, J.**

Plaintiff appeals the trial court's judgment dismissing her medical malpractice claim, under ORCP 21 A, as untimely and for failure to comply with the notice requirements of the Oregon Tort Claims Act (OTCA). Plaintiff argues that she sufficiently pleaded that defendants made a payment to her, in the form of free or discounted medical care, which both suspended the running of the statute of limitations and evidenced the required OTCA notice under ORS 30.275(3)(d).[1] She also argues that complaints that she made to defendants satisfied the "actual notice" requirement under ORS 30.275(3)(b). As explained below, we agree with plaintiff that she satisfied the OTCA notice requirement by alleging facts sufficient to prove that defendants paid "all or any part of the claim" that she ultimately brought against defendants, ORS 30.275(3)(d). We also conclude that plaintiff adequately alleged that the limitations period was tolled because defendants made an "advance payment" under ORS 12.155 without providing her with written notice of the date of expiration of the statute of limitations. The judgment is reversed.

In reviewing a trial court's grant of a motion to dismiss, we assume the truth of all well-pleaded facts alleged in the complaint and give plaintiff, the nonmoving party, the benefit of all favorable inferences that may be drawn from those facts. *Kilminster v. Day Management Corp.*, 323 Or 618, 621, 919 P2d 474 (1996).

Plaintiff underwent oral surgery at defendant Oregon Health & Science University (OHSU) on July 14, 2008. The surgery was performed by Dr. Arce and Dr. Wilkinson, also defendants and employed by OHSU. The surgery involved "applying cryotherapy with liquid nitrogen" and was supposed to be "routine." However, in the days immediately following the procedure, plaintiff experienced pain and bleeding in her mouth, had difficulty swallowing, and could not eat. On July 19, plaintiff reported "significant

---

[1] ORS 30.275(1) provides, in pertinent part, that "[n]o action arising from any act or omission of a public body or an officer, employee or agent of a public body * * * shall be maintained unless notice of claim is given as required by this section."

pain" to OHSU medical personnel and was eventually diagnosed with "clinical and subjective symptoms of mucosal burn from the liquid nitrogen." In the weeks and months that followed, plaintiff experienced complications including infections, tissue death, loss of feeling in her lip and tongue, and a fracture of her lower jaw. Between July 2008 and October 2010, plaintiff underwent four additional "oral surgeries to debride the dead tissue in [her] mouth and to repair her fractured jaw, as well as three more oral procedures to install implants for two of [her] teeth that had to be removed." Defendants provided that additional medical care to plaintiff at little or no cost. Following the series of procedures, plaintiff was left with nerve damage and disfigurement.

Almost five years after her initial surgery, on July 12, 2013, plaintiff filed a complaint for professional medical negligence against OHSU, Arce, and Wilkinson. Because OHSU is a quasi-public entity, plaintiff's claim is subject to the OTCA, including the two-year statute of limitations, ORS 30.275(9), and the notice requirement, ORS 30.275(2). With respect to notice, ORS 30.275(2)(b) provides that a notice of a claim (other than a claim for wrongful death) must be given "within 180 days after the alleged loss or injury." Notice may be provided in four distinct ways:

"(a)   Formal notice of claim as provided in subsections (4) and (5) of this section;

"(b)   Actual notice of claim as provided in subsection (6) of this section;

"(c)   Commencement of an action on the claim by or on behalf of the claimant within the applicable period of time provided in subsection (2) of this section; or

"(d)   Payment of all or any part of the claim by or on behalf of the public body at any time."

ORS 30.275(3). The plaintiff bears the burden of proving that the requisite OTCA notice was given. ORS 30.275(7).

Defendants moved to dismiss plaintiff's complaint on two grounds: (1) that it was time-barred, and (2) that plaintiff had failed to allege that she provided the OTCA notice required by ORS 30.275(2). With respect to notice,

plaintiff responded that she had satisfied the requirement by pleading (1) "actual notice" to OHSU under ORS 30.275(3)(b), and (2) "payment of all or any part of the claim" by OHSU under ORS 30.275(3)(d).[2] With respect to the statute of limitations, plaintiff argued that she had pleaded facts sufficient to establish that the two-year period was tolled under ORS 12.155[3] because defendants made an "advance payment" to her (in the form of free or discounted medical care) without giving her written notice of the date when the applicable statute of limitations would expire.

The trial court sided with defendants but allowed plaintiff an opportunity to amend her pleading. Ultimately, the court dismissed the second amended complaint (SAC) after concluding that plaintiff had failed to cure the deficiencies in her first complaint. In doing so, the court concluded that defendants' provision of free or discounted medical care neither constituted a "payment" for purposes of tolling the statute of limitations nor evidenced notice for purposes of the OTCA. Plaintiff appeals, reprising her arguments below.

We first address the OTCA notice issue. The relevant allegations are found in the following five paragraphs of plaintiff's SAC:

"(7)  [Plaintiff] continued experiencing terrible pain. She contacted OHSU and reported to its staff that her injuries were a result of a 'surgery gone bad.' She told Dr. Arce,

---

[2] The court rejected plaintiff's "actual notice" argument, and plaintiff renews it on appeal. Because we conclude that plaintiff met the notice requirement by pleading "payment of all or any part of the claim" by OHSU, we need not and do not address her "actual notice" argument.

[3] ORS 12.155 provides, in pertinent part:

"(1) If the person who makes an advance payment referred to in ORS 31.560 or 31.565 gives to each person entitled to recover damages for the death, injury or destruction, not later than 30 days after the date the first of such advance payments was made, written notice of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations, then the making of any such advance payment does not suspend the running of such period of limitation. * * *

"(2) If the notice required by subsection (1) of this section is not given, the time between the date the first advance payment was made and the date a notice is actually given of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations is not part of the period limited for commencement of the action by the statute of limitations."

along with several social workers, the billing people, and 'anyone who would listen' of her belief that the surgery had gone bad. [Plaintiff] also told OHSU personnel, staff, and/or treating physicians that they should inform patients about the risks or bad outcomes following surgery that she was then suffering.

"* * * * *

"(24)   Following her first July 14, 2008 surgery and her insistence to OHSU personnel and care providers that surgery had failed and caused her additional injury, [plaintiff] asked to whom she could report this and was never informed to contact the Risk Management department. When [plaintiff] asked for a board member's name so that she could approach them about payment for her injuries, she was told that OHSU did not have a board. [Plaintiff] expressly told Dr. Arce that she was not going to pay for the first or any remedial treatment or surgeries and Dr. Arce told her 'don't worry about it, we'll take care of it.' Dr. Arce also told [plaintiff] that if he could get it taken care of within 90 days, it would not be a problem.

"(25)   Dr. Arce repeated several times to [plaintiff] throughout the following two years that 'he would take care of it.'

"(26)   Dr. Arce also referred [plaintiff] to treating doctors and, on information and belief, informed those doctors that he was taking care of the medical bill and/or that any bill should be deeply discounted.

"(27)   As a result of Dr. Arce's offer of recompense for her injuries, [plaintiff] either did not pay for the first surgery and the subsequent remedial medical treatment and surgeries received, or she was required only to pay a nominal fee. As a result, [plaintiff] did not initially file a lawsuit to seek other reparations for her injuries, the extent of which became known over the course of the two years of attempts to address the prior injuries. After providing that recompense, however, OHSU never informed [plaintiff] of any statute of limitations applicable to her claim for injuries. Rather, after one of several of [plaintiff's] contacts with the OHSU billing department, she was told that, once Dr. Arce left OHSU, [plaintiff] would no longer be receiving gratis medical care. Dr. Arce treated [plaintiff] through July 2010, when he transferred to [a facility in another state]."

The parties dispute whether those allegations adequately allege that plaintiff provided notice of her claim as required by ORS 30.275. In defendants' view, although the SAC alleges that plaintiff complained about the results of her initial procedure and insisted that she would not pay for it or for subsequent remedial care, what is missing is an allegation that plaintiff communicated an intent to assert *a claim* of legal liability, or even an allegation that plaintiff believed that her unsuccessful surgery was the result of negligence. Without such allegations, according to defendants, they could not have made a "payment of all or any part of the claim" as provided in ORS 30.275(3)(d). Defendants also argue that the provision of free or discounted medical care is not a "payment."

We begin with defendants' contention that the provision of free or discounted medical care cannot constitute a "payment" because defendants did not make, and plaintiff did not receive, any disbursements of money. We disagree. Although the OTCA does not define the term "payment," that term is commonly understood to mean "the act of paying or giving compensation" or "something given to discharge a debt or obligation or to fulfill a promise." *Webster's Third New Int'l Dictionary* 1659 (unabridged ed 2002). "Compensation" is relevantly defined as the act or action of "making good," something that constitutes "recompense," and "something that makes up for a loss." *Id.* at 463; *see also Anais v. Dias*, 70 Or App 478, 481, 689 P2d 1011 (1984), *rev den*, 298 Or 704 (1985) (for purposes of ORS 12.155, "compensation" means "payment which is reparation for a loss"). In this case, plaintiff alleged that she suffered a loss at the hands of defendants in the form of a botched surgery that caused her new injuries; that at least one of the defendants promised to "take care" of her with respect to any necessary remedial treatment; and that, as a result of that promise, plaintiff either did not pay or paid only a nominal fee for the initial surgery and subsequent medical treatment. Defendants' conduct following plaintiff's initial injury, as alleged, can be readily understood as a form of paying or compensating plaintiff for that injury.

Having established that the term "payment" can be understood to include the provision of discounted or free

medical services, the next question is whether plaintiff's SAC is deficient because it does not allege that plaintiff asserted a claim or obligation in response to which the "payment" was made. Again, defendants reason that, if plaintiff did not assert such a claim or obligation, they could not have made any "payment" on one. Defendants do not contend that a plaintiff must have *formally* asserted a claim of legal liability in order to trigger ORS 30.275(3)(d), but they argue that a plaintiff must, at a minimum, have placed the public body on notice that a claim of liability is asserted to exist.

Plaintiff counters that a person is not required to assert any "claim" for payment before "payment of all or any part of the claim" by the public body can be made. Plaintiff relies on our decision in *Hughes v. City of Portland*, 255 Or App 271, 277, 296 P3d 642 (2013), where we construed the notice requirement under ORS 30.275(3)(d) and concluded that "payment of all or any part of 'the claim' refers to payment of all or part of the specific claim or claims that the plaintiff *ultimately* asserts against the public body." (Emphasis added.) Plaintiff thus argues that, to satisfy the notice requirement in paragraph (3)(d), it suffices to allege that defendants paid for the costs of her medical care following the initial surgery because such medical expenses would be recoverable damages in her later-asserted claim for medical negligence.

In *Hughes*, the plaintiff was a passenger in a vehicle driven by Bruce, which was involved in an accident alleged to have been caused by a City of Portland employee. *Id.* at 273. Bruce's vehicle was insured by State Farm, which opened personal injury protection (PIP) claims for both Bruce and the plaintiff after the accident. State Farm then sent letters to the city's risk-management office, providing the date, location, and description of the accident, and requesting reimbursement for any payments that it made under the PIP claims. *Id.* at 273-74. A later letter from State Farm to the city specified the amount of requested reimbursement as $636.11. Handwritten notes on that letter indicated that, of that amount, $532.11 pertained to the plaintiff's claim, while the remaining $104.00 was related to Bruce's claim. The city issued a check to State Farm for the full requested amount.

The plaintiff brought a negligence action against the city, seeking damages for injuries incurred in the accident. *Id.* at 275. The trial court granted summary judgment for the city on the ground that the plaintiff failed to give timely OTCA notice under ORS 30.275, rejecting the plaintiff's argument that the city's payment to State Farm satisfied the "payment" provision in ORS 30.275(3)(d).

On appeal, we considered whether the city's reimbursement to State Farm was a "payment" on the plaintiff's "claim" for purposes of ORS 30.275(3)(d), even though the plaintiff had not yet asserted a claim against the city at the time of the payment. *Id.* at 277. We held that it could be:

> "A public body's reimbursement of PIP benefits under ORS 742.534 demonstrates that the public body is aware that an accident has occurred, that a particular person has suffered bodily injury as a result, and that the public body is alleged (at least by the PIP insurer) to be responsible for the accident. If the reimbursement is given voluntarily, it also constitutes an acknowledgement by the public body of its probable liability for the accident."

*Id.* at 280. We further observed that the policy behind the notice requirement—to allow the public body an opportunity to investigate the alleged tort promptly and ascertain the facts before they become stale—was served by our interpretation because, by the time that a public body pays such a request, it will have "sufficient information to give it the *opportunity* and the incentive to investigate to determine whether the injured person intends to make a claim against it." *Id.* at 280-81 (emphasis added).

According to plaintiff, under *Hughes*, all that is required to satisfy ORS 30.275(3)(d) is a "payment" of all or part of "the specific claim or claims that the plaintiff *ultimately* asserts against the public body." *Id.* at 277 (emphasis added). Defendants argue that *Hughes* is distinguishable because, in that case, it was perfectly clear that the public body was aware that a claim of legal liability had been asserted (in the form of the request for PIP reimbursement); thus, we simply had no reason to consider the question presented here, which is what plaintiff needed to do in order to make defendants aware of her "claim."

Without necessarily accepting (or rejecting) plaintiff's assertion that, in all cases, a prelitigation payment of part of an ultimately asserted claim indicates notice, we are persuaded that, under a correct interpretation of ORS 30.275(3)(d), plaintiff in the present case sufficiently alleged that defendants made a payment on her "claim" even though she did not expressly allege that she made an assertion of defendants' legal liability.

The three other notice provisions set out in ORS 30.275(3)—formal notice, ORS 30.275(3)(a), actual notice, ORS 30.275(3)(b), and commencement of an action, ORS 30.275(3)(c)—all entail some proof of an expressed assertion that the public body is liable for a claim. Defendants argue that those provisions provide context for interpreting the notice-by-payment provision, ORS 30.275(3)(d), to impose a similar proof requirement. On the contrary, given that the other forms of notice have such well-delineated requirements, the lack of any such detail in ORS 30.275(3)(d) is glaring. Whereas the other notice provisions place the focus on the form and content of a claimant's actions, ORS 30.275(3)(d) places the focus squarely on what the public body evidently understood as revealed through *its* actions. Thus, unlike the test for "actual notice" under paragraph (3)(b), which is focused on the content of the communications made to the public body, *see Flug v. University of Oregon*, 335 Or 540, 554, 73 P3d 917 (2003), we understand paragraph (3)(d) to mean that a public body is deemed to have been put on notice when a claimant does something that causes the public body to make a payment in connection with the facts underlying the claim that is ultimately asserted.

In short, plaintiff alleged sufficient facts for OTCA notice under ORS 30.275(3)(d) by pleading that defendants paid for the costs of her medical care at a time when she had a basis to assert a claim, and because such costs would be recoverable in the claim that she ultimately asserted for negligence.

Having concluded that plaintiff adequately pleaded OTCA notice, we must also address whether plaintiff's claim is barred by the two-year statute of limitations in ORS 30.275(9). As noted, plaintiff filed her action almost

five years after the initial surgery. Plaintiff nevertheless contends that her action is timely because she alleged facts that show that the two-year statute of limitations was tolled under ORS 12.155, which provides, in pertinent part:

> "(1)   If the person who makes an advance payment referred to in ORS 31.560 or 31.565 gives to each person entitled to recover damages for the death, injury or destruction, not later than 30 days after the date the first of such advance payments was made, written notice of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations, then the making of any such advance payment does not suspend the running of such period of limitation. * * *
>
> "(2)   If the notice required by subsection (1) of this section is not given, the time between the date the first advance payment was made and the date a notice is actually given of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations is not part of the period limited for commencement of the action by the statute of limitations."

The term "advance payment" in ORS 12.155 is specifically defined in another statute, ORS 31.550, as "compensation for the injury or death of a person or the injury or destruction of property prior to the determination of legal liability therefor." In addition, ORS 31.560—the first statute[4] cross-referenced in ORS 12.155—provides:

> "(1)   Advance payment made for damages arising from the death or injury of a person is not an admission of liability for the death or injury by the person making the payment unless the parties to the payment agree to the contrary in writing.
>
> "(2)   For the purpose of subsection (1) of this section, *advance payment is made when payment is made with or to*:
>
> "(a)   *The injured person*;
>
> "(b)   A person acting on behalf of the injured person with the consent of the injured person; or

---

[4] ORS 31.565, the second statute cross-referenced in ORS 12.155, relates to advance payments for property damage, and is not implicated by the facts of this case.

"(c) Any other person entitled to recover damages on account of the injury or death of the injured or deceased person."

(Emphases added.) Taken together, then, to prevent the tolling of the statute of limitations under ORS 12.155, a person who provides "compensation for the injury * * * of a person * * * prior to the determination of legal liability therefor" must give written notice of the expiration of the limitations period to "each person entitled to recover damages" for that injury. ORS 31.550, ORS 12.155(1).

Defendants do not dispute that the two-year statute of limitations in ORS 30.275(9) may be suspended by the making of an "advance payment" within the meaning of ORS 12.155.[5] Moreover, the parties agree that, if defendants made an "advance payment," then the statute of limitations on plaintiff's claim was suspended unless and until defendants gave her written notice of the date that the limitations period would expire. Defendants never gave such a notice. Defendants argue, however, that the allegations in the SAC are insufficient to establish that any such "advance payment" was made here. Echoing their arguments with respect to the OTCA notice issue, defendants contend that an "advance payment" is one made in response to a known ground for legal liability, whether or not formally asserted. In this case, defendants reason, the SAC alleges that plaintiff complained about the results of her initial procedure and insisted that she would not pay for it or for subsequent remedial care, but nowhere alleges that plaintiff asserted any claim of legal liability or obligation on which an "advance payment" could be made.

The statute does not support defendants' position. As noted above, the meaning of the term "advance payment" for purposes of ORS 12.155 is found in ORS 31.550, which defines the phrase to mean "compensation for the injury or death of a person or the injury or destruction of property

---

[5] In *Baker v. City of Lakeside*, 343 Or 70, 82-83, 164 P3d 259 (2007), the Supreme Court made clear that the clause in ORS 30.275(9)—stating that the two-year limitations period applies "notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action"—applies only to those provisions of the chapter and other statutes that provide a *limitation* on the commencement of an action, not tolling statutes.

prior to the determination of legal liability therefor." For reasons already discussed in this opinion, defendants' provision of free or discounted medical services qualifies as "compensation" for the "injury" that plaintiff suffered. *See also Anais,* 70 Or App at 481 ("compensation" means "payment which is reparation for a loss"). And defendants provided that compensation "prior to the determination of legal liability" for plaintiff's injuries. That is all that is required for an "advance payment" for purposes of the tolling provision in ORS 12.155. Defendants' contention that some claim of legal liability must have been asserted first is not supported by the text or context of the statute, and defendants point us to no case or legislative history in support of their interpretation.

For the foregoing reasons, the trial court erred in granting defendants' motion to dismiss.

Reversed and remanded.