Argued and submitted October 5, 2021; dismissal of Moore plaintiffs' First Claim, Count 2, for battery that occurred within the notice period reversed; dismissal of Demma's First Claim, Count 2, for battery reversed; dismissal of Moore plaintiffs' Second Claim for hostile work environment that occurred within the notice period reversed; dismissal of Conley's Fourth Claim for disability discrimination reversed; remanded for further proceedings; otherwise affirmed September 27, 2023

Joyce MOORE,
an individual;
Virginia Ferrer-Burgett, an individual;
Cassie Gamez, an individual;
Arline Weaver, an individual;
Sarah Conley, an individual;
Debra Meskimen, an individual;
Angela Gonci, an individual;
and Julie Manzella, an individual,
*Plaintiffs-Appellants,*

*v.*

PORTLAND PUBLIC SCHOOLS,
Public School District #1 a public entity;
Mary Pearson, an individual;
Michael Laframboise, an individual;
Theresa Stubbs, an individual;
and Andres Porter-Lopez, an individual,
*Defendants-Respondents,*

*and*

Kristen WEILER,
*Defendant.*

Multnomah County Circuit Court
18CV49922; A173665 (Control)

Theresa DEMMA,
an individual,
*Plaintiff-Appellant,*

*v.*

PORTLAND PUBLIC SCHOOLS,
Public School District #1, a public entity;
Reiko Williams, an individual;
Jon Williams, an individual;
Teresa Stubbs, an individual;

Karly Lefferts, an individual;
and Michael Conn, an individual,
*Defendants-Respondents.*

Multnomah County Circuit Court
19CV26384; A174162

537 P3d 544

This consolidated appeal arises out of two cases, *Moore et al. v. Portland Public Schools et al.* (Case No. 18CV49922) and *Demma v. Portland Public Schools et al.* (Case No. 19CV26384). Each case was brought by plaintiffs who worked as paraeducators in special education classrooms against defendant Portland Public Schools (PPS) and several individual defendants who, like plaintiffs, are employed by PPS. Plaintiffs appeal the final judgments, with plaintiffs in Moore assigning as error (1) the dismissal of a portion of their claims for failure to provide adequate formal tort claims notices; (2) the dismissal of battery claims for failure to state a claim against PPS; (3) the dismissal of battery and disability discrimination claims for timeliness; (4) the dismissal of hostile work environment claims based on sexual harassment for failure to state a claim; and (5) the dismissal of the individual defendants and substitution of PPS as the sole defendant. Plaintiff Demma challenges only the dismissal of her battery claim. *Held*: The trial court did not err in finding that the tort claims notices did not specify the places and circumstances of the alleged torts, a requirement in ORS 30.275 for notice of claims against a public body. For that reason, claims of tortious conduct that occurred more than 180 days before each complaint was filed were untimely. ORS 30.275(2) and (3)(c). The trial court erred in concluding that plaintiffs failed to state battery claims for which PPS could be held liable; a theory of direct liability applied in this case. For that reason, the dismissal of battery claims that fell within the notice period was also erroneous. Dismissal of the disability discrimination claim was erroneous because plaintiffs' allegations created a question of fact whether the claim accrued within the notice period. The trial court erred in concluding that plaintiffs did not allege ultimate facts establishing a claim of sex discrimination constituting a hostile work environment; harassment "based on sex" is not precluded by allegations that individuals of multiple sexes experience the same harassment. Finally, the trial court erred in dismissing the individual defendants because plaintiffs made sufficient allegations that, if true, allow a factfinder to infer that defendants' conduct "occurred substantially [outside] the time and space limits authorized by the employment," that the conduct was not "of a kind which the employee was hired to perform," and that defendants' conduct was a cause of plaintiffs' alleged injuries. *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988).

Dismissal of Moore plaintiffs' First Claim, Count 2, for battery that occurred within the notice period reversed; dismissal of Demma's First Claim, Count 2, for battery reversed; dismissal of Moore plaintiffs' Second Claim for hostile work environment that occurred within the notice period reversed; dismissal of Conley's Fourth Claim for disability discrimination reversed; remanded for further proceedings; otherwise affirmed.

Leslie G. Bottomly, Judge. (Limited Judgment June 12, 2020)

Nan G. Waller, Judge. (Limited Judgment February 13, 2020)

Rebecca Cambreleng argued the cause for appellants. Also on the briefs were Crispin Marton Cambreleng and Alana G. I. Simmons and The Dalton Law Firm.

Michael Porter argued the cause for respondents. Also on the brief were Ivan Resendiz Gutierrez and Miller Nash Graham & Dunn LLP.

Caitlin Mitchell and Johnson Johnson Lucas & Middleton PC and Elizabeth C. Savage and Karmel Savage, PC, filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

J. Aaron Landau, Sharon A. Rudnick and Harrang Long Gray Rudnick PC filed the brief *amicus curiae* for Oregon School Boards Association.

Janet M. Schroer, Ruth A. Casby and Hart Wagner LLP filed the brief *amici curiae* for League of Oregon Cities and Association of Oregon Counties.

Before Egan, Presiding Judge, and Lagesen, Chief Judge, and Nakamoto, Senior Judge.*

NAKAMOTO, S. J.

Dismissal of Moore plaintiffs' First Claim, Count 2, for battery that occurred within the notice period reversed; dismissal of Demma's First Claim, Count 2, for battery reversed; dismissal of Moore plaintiffs' Second Claim for hostile work environment that occurred within the notice period reversed; dismissal of Conley's Fourth Claim for disability discrimination reversed; remanded for further proceedings; otherwise affirmed.

_____

\* Lagesen, C. J., *vice* DeHoog, J. pro tempore.; Nakamoto, S. J., *vice* DeVore, S. J.

**NAKAMOTO, S. J.**

This consolidated appeal arises out of two cases, *Moore et al. v. PPS et al.* (Case No. 18CV49922) and *Demma v. PPS et al.* (Case No. 19CV26384), brought by plaintiffs who worked as paraeducators in special education classrooms within defendant Portland Public Schools (PPS). Asserting a range of claims, plaintiffs alleged that they repeatedly and regularly were subjected to physical assaults, and in some instances sexual assaults, by students, but, despite complaints and entreaties to PPS and various individual employees of PPS named as defendants, defendants failed to correct or ameliorate their working conditions.

In each case, the trial court dismissed the individual defendants under ORS 30.265, the provision of the Oregon Tort Claims Act (OTCA) that provides for a "sole cause of action" against a public body for the torts of its employees committed within the course and scope of their employment. The trial courts then dismissed most of plaintiffs' claims—including claims of employment discrimination and claims of battery—either because the claims were untimely or because plaintiffs had failed to state a claim upon which relief can be granted. For the reasons that follow, we conclude that the trial court in *Moore* erred in dismissing Conley's disability discrimination claim and plaintiffs' sex discrimination claims based on a hostile work environment theory and by substituting PPS for the individual defendants. We further conclude that both trial courts in *Moore* and *Demma* erred by dismissing plaintiffs' claims that PPS is directly liable for battery. We otherwise affirm.

## I.   BACKGROUND

We begin by describing procedural background facts for each case. We later discuss some of plaintiffs' allegations in more detail when analyzing their assignments of error as to specific claims for employment discrimination and for battery.

A.   *Moore et al. v. PPS et al.*

Plaintiffs in *Moore* are eight female paraeducators who were employed by PPS and worked in special education classrooms. During the time period relevant to the claims,

plaintiffs Moore and Ferrer-Burgett worked at Woodlawn Elementary School. The remaining plaintiffs, Conley, Gonci, Meskimen, Manzella, Weaver, and Gamez, worked at either Sunnyside Environmental School or Buckman Elementary School.

On May 21, 2018, Moore, through her attorney, sent an "ORS 30.275 Tort Claim Notice" to PPS. In it, she notified PPS of her intent to file one or more claims for damages against PPS "and/or one or more of its officers, employees, or agents." The notice stated, in relevant part:

"Ms. Moore's claims include negligence, intentional infliction of emotional distress, discrimination, retaliation, interference with workers' compensation, and other violations of state law.

"Ms. Moore has been a loyal district employee for over 26 years. In the last few years she has been the victim of appalling behavior by [PPS] including retaliation against her for use of worker's compensation, subjecting her to daily sexual and physical assault and battery without recourse or ways to report the attacks or to create a safe space, for racial discrimination, and for knowingly, deliberately, and with wanton and reckless disregard putting her in situations where there is a high likelihood of bodily injury."

The same day, Ferrer-Burgett, through her attorney, sent a similar tort claim notice to PPS. It stated, in relevant part:

"Ms. Ferrer-Burgett's claims include negligence, intentional infliction of emotional distress, and other violations of state law.

"Ms. Ferrer-Burgett has been a loyal district employee and has over 20 years of experience working with children. But in the last 2 years while working at Woodlawn she has been the victim of appalling behavior by [PPS] including daily sexual and physical assault and battery without recourse or ways to report the attacks or to create a safe space, and for knowingly, deliberately, and with wanton and reckless disregard putting her in situations where there is a high likelihood of bodily injury."

Nearly six months later, on November 1, 2018, Moore and Ferrer-Burgett filed this action against PPS

and two individual defendants, the principal of Woodlawn Elementary School and a risk management employee for PPS. Moore and Ferrer-Burgett alleged that "they were subject to daily assaults and battery to their persons by students, including sexual assaults and battery," and they asserted multiple claims for relief.

On December 10, 2018, the remaining plaintiffs, through their attorneys, sent a tort claim notice to PPS. The notice stated, in relevant part:

"The potential claims include general tort claims for assault and battery, negligence, hostile work environment, intentional infliction of emotional distress, retaliation and other violations of state and/or federal law.

"Our clients, and many like them, continue to be the victims of appalling behavior by [PPS] including intentionally subjecting them to daily sexual and physical assaults and battery and for knowingly, deliberately, and with wanton and reckless disregard putting them in situations where there is a high likelihood of bodily injury."

On January 28, 2019, plaintiffs filed a first amended complaint in which they amended claims asserted by Moore and Ferrer-Burgett and added claims by the other plaintiffs. The amended complaint also dropped the risk management employee as a defendant and added three other individual defendants: the senior director of special education for PPS and the principal and vice-principal of PPS's Pioneer Program.

In the amended complaint, Moore and Ferrer-Burgett again alleged that in the classrooms where they worked, "they were subject to daily assaults and battery to their persons by students, including sexual assaults and battery." Gamez and Weaver alleged that in the classrooms where they worked, they "were repeatedly and consistently assaulted by students over the years, and requested help from administrators at every turn." Conley, Meskimen, Gonci, and Manzella alleged that in their classrooms, they faced ongoing physical assaults from one particular student, identified in the complaint as "Student B." In addition to being physically violent, student B, they alleged, acted out sexually toward Conley, Meskimen, Gonci, and Manzella.

Several plaintiffs alleged that they experienced similar assaultive conduct by two other specific students, identified as "Student A" and "Student C," as well as from other students. Based on those facts, all plaintiffs in *Moore* alleged, among other claims, (1) a claim for battery against PPS and (2) an unlawful employment practices claim under ORS 659A.030 based on a hostile work environment against all defendants.

Defendants moved to dismiss under *former* ORCP 21 A(1) (2018), *renumbered as* ORCP 21 A(1)(a) (2022), *former* ORCP 21 A(8) (2018), *renumbered as* ORCP 21 A(1)(h) (2022), and *former* ORCP 21 A(9) (2018), *renumbered as* ORCP 21 A(1)(i) (2022). Pertinent to this appeal, defendants asserted that (1) ORS 30.265(3) required dismissal of the individual defendants, because the complaint established that their actions were within the scope of their employment with PPS and, as a result, plaintiffs' sole cause of action was against PPS; (2) plaintiffs' tort claims notices failed to identify the "time, place, and circumstances giving rise to their claims," which ORS 30.275(4) mandates, requiring dismissal of any claims based on conduct occurring more than 180 days before the filing of the complaint; (3) plaintiffs failed to state a claim for a hostile work environment under ORS 659A.030; and (4) plaintiffs failed to state a claim for battery because the gravamen of their claim was that PPS did not respond to plaintiffs' complaints that students had committed battery against them, which is insufficient to establish the elements of the intentional tort.

The trial court granted the motions. First, it granted the motion to dismiss the individual defendants "because [PPS] is the only proper defendant in accordance with the sole cause of action provisions of the [Oregon Tort Claims Act (OTCA)]."

Second, it determined that the tort claims notices failed to adequately describe the time, place, and circumstances underlying plaintiffs' claims as required by ORS 30.275(4)(b). The court concluded that it consequently "lacked subject matter jurisdiction" over claims that arose "more than 180 days prior to the filing of the November 1, 2018 complaint for Plaintiffs Moore and Ferrer-Burgett, and

180 prior to the filing of the January 28, 2019 complaint for Plaintiffs Conley, Gamez, Gonci, Manzella, Meskimen, and Weaver." The trial court's determination had the effect of time-limiting the claims because plaintiffs only satisfied the notice requirement under the OTCA when they later commenced their action. *See* ORS 30.275(3)(c). Plaintiffs Moore and Ferrer-Burgett sued on November 1, 2018, and so their claims had to be based on events occurring within 180 days before they filed the complaint, which is on or after May 5, 2018. For the six other plaintiffs in *Moore*, who sued on January 28, 2019, their claims had to be based on events occurring on or after August 1, 2018.

Third, the court dismissed the claim based on a hostile work environment in its entirety. The court ruled that, even for allegations that arose within the 180-day period before the claims were asserted in the complaint, plaintiffs "failed to state ultimate facts sufficient to constitute a hostile work environment claim."

Fourth, the trial court dismissed the battery claim, concluding that the allegations were not sufficient to hold PPS liable for batteries committed by students. The court reasoned that the claim failed because plaintiffs had not alleged facts that would show that PPS "intentionally assisted, directed, [or] had knowledge that any student intended to engage in offensive conduct towards the plaintiffs" and had not alleged facts to show how "the offensive conduct of the students benefited" PPS. The court ruled initially that it would allow plaintiffs leave to amend their complaint but, ultimately, entered a limited judgment dismissing the battery and the hostile work environment claims and dismissing the individual defendants from the action. Plaintiffs appealed.

B.   *Demma v. PPS et al*.

Demma taught in a special education classroom at PPS's Sabin Elementary School and, later, in a special education classroom at Jason Lee Elementary School. On January 7, 2019, through her attorney, Demma sent a tort claim notice to PPS.

On June 14, 2019, Demma filed her action, naming PPS and five individuals as defendants. Consistent with her

tort claims notice, Demma alleged that she had been subject to ongoing physical violence and attacks by students at both schools where she worked since the beginning of the 2018-19 school year. Demma also asserted multiple claims, including a claim for battery based on the assaultive conduct by students.

As they did in the *Moore* case, defendants filed a motion to dismiss and reiterated the same challenges to Demma's inclusion of individual defendants in the action, to the adequacy of her tort claims notice, and to the sufficiency of her claims. The trial court rejected PPS's contention that Demma's tort claims notice inadequately described the time, place, and circumstances underlying her claim. Otherwise, like the trial court in *Moore*, the court dismissed the individual defendants and dismissed Demma's hostile work environment and battery claims. On Demma's battery claim, the trial court ruled that the allegations were insufficient to "impute the intentional tort to the Portland Public Schools" and that Demma failed "to state ultimate facts sufficient to constitute a claim."

C.  *Consolidated Appeal*

The two cases were consolidated for appeal. In their opening brief, the *Moore* plaintiffs raise six assignments of error; Demma joins only in the second assignment of error, challenging the dismissal of her battery claim.

The *Moore* plaintiffs assign error to the trial court's rulings as follows:

- granting defendants' motion to dismiss a portion of all of the *Moore* plaintiffs' claims for failure to provide adequate formal tort claims notices (third and fourth assignments);

- granting defendants' motions to dismiss plaintiffs' battery claims for failure to state a claim (second assignment), which Demma joins;

- granting defendants' motion to dismiss plaintiffs' claims for battery and Conley's claim for disability discrimination on the ground that plaintiffs alleged no actionable conduct within 180 days preceding the filing of the complaints (sixth assignment);

- granting defendants' motion for dismissal of the hostile work environment claims for failure to state a claim (first assignment); and

- dismissing the individual defendants and substituting PPS as the sole defendant by granting defendants' motion (fifth assignment).

## II.   ANALYSIS

### A.   *The Sufficiency of the Tort Claim Notices*

We begin with the third and fourth assignments of error concerning the tort claims notices by the *Moore* plaintiffs. Under the OTCA, a party may bring a tort claim against a public body or an officer or employee of a public body,[1] but the party must give advance notice of the party's intent to assert the claim, as provided in ORS 30.275. *See* ORS 30.275(1) (no such action may be maintained "unless notice of claim is given as required by this section"). For torts other than wrongful death, the party must give the public body notice of claim "within 180 days after the alleged loss or injury." ORS 30.275(2). The required notice of claim may be satisfied in several different ways, including by giving a formal notice of claim, ORS 30.275(3)(a), and by "[c]ommencement of an action on the claim by or on behalf of the claimant within the applicable period of time provided in subsection (2)," ORS 30.275(3)(c).

The substantive requirements for a formal tort claims notice are found in ORS 30.275(4). Plaintiffs bear "the burden of proving that notice of claim was given as required." ORS 30.275(7).[2] In this case, the trial court in *Moore* determined that the substance of plaintiffs' formal tort claims notices was deficient for failure to provide a "description of the time, place and circumstances giving rise to the claim, so far as known to the claimant," as required by ORS 30.275(4)(b).

---

[1] There is no dispute that PPS is a public body. *See* ORS 30.260(4)(a) (defining a "public body" for purposes of ORS 30.275 by reference to ORS 174.109, which defines a "public body" as "state government bodies, local government bodies and special government bodies").

[2] We reject plaintiffs' contention in their reply brief that the burden of proof refers to a plaintiff's burden of proof in a legal action and does not apply to the sufficiency of formal tort claim notices. That position flies in the face of the plain meaning of subsection (7).

The *Moore* plaintiffs challenge the trial court's conclusion that their formal tort claims notices did not comply with ORS 30.275(4)(b) and its consequent ruling dismissing their claims to the extent that those claims were based on conduct occurring more than 180 days before the filing of their respective complaints. We first reject plaintiffs' third assignment, in which they contend that the trial court was not authorized to resolve the issue of the adequacy of their tort claims notices on a motion to dismiss.

Relying primarily on *Voth v. Smith*, 188 Or App 59, 69 P3d 1274 (2003), plaintiffs argue that the trial court was required to wait until summary judgment to resolve whether their tort claims notices were sufficiently detailed. *Voth*, however, arose in a different procedural posture and is not on point. In that case, the trial court dismissed the complaint under ORCP 21 based on its determination that the plaintiff "failed to *allege* timely tort claim notice." *Id.* at 61 (emphasis added). On appeal, the defendants conceded that the plaintiff's *allegations* were adequate to withstand a motion to dismiss and that the adequacy of the plaintiff's tort claim notice should be evaluated later on summary judgment. *Id.* We accepted the concession without considering whether one of the other types of motions to dismiss authorized by ORCP 21 would supply a mechanism for assessing the adequacy of a tort claims notice. *Voth* did not require the trial court to defer ruling on the adequacy of the tort claims notices.

Unlike in *Voth*, PPS moved to dismiss under *former* ORCP 21 A(1) on the ground that the court lacked subject matter jurisdiction because of plaintiffs' failure to provide adequate tort claims notice. *See Curzi v. Oregon State Lottery*, 286 Or App 254, 265, 398 P3d 977, *rev den*, 362 Or 175 (2017) (failure to give adequate tort claims notice deprives a court of subject matter jurisdiction). A challenge to subject matter jurisdiction may be raised and resolved through a motion to dismiss under *former* ORCP 21 A(1)(a): "The following defenses may, at the option of the pleader, be made by motion to dismiss: *** lack of jurisdiction over the subject matter." Moreover, when the issue of subject matter jurisdiction is raised by way of a motion to dismiss

under *former* ORCP 21 A(1)(a), the trial court may consider evidence and resolve disputes of fact, so long as it does not resolve factual disputes relating to the merits of the underlying claims. *Munson v. Valley Energy Investment Fund*, 264 Or App 679, 695, 333 P3d 1102 (2014). As a procedural matter, the trial court properly proceeded to the merits of defendants' challenge to the court's subject matter jurisdiction through their motion to dismiss, and so we reject plaintiffs' third assignment of error.

In their fourth assignment of error, plaintiffs assert that the trial court erroneously concluded that the *Moore* plaintiffs' tort claims notices did not supply "[a] description of the time, place and circumstances giving rise to the claim, so far as known to the claimant," as required under ORS 30.275(4)(b). The trial court in *Moore* agreed with defendants that each of the notices was deficient by describing only generalized claims about the particular plaintiff's experience of assault by students, reports and complaints to defendants, and inaction by defendants, and not information about the specific time, place, and circumstances of each incident or even groups of incidents underlying their allegations. Defendants argue that the trial court correctly observed that such generalized information was insufficient to give defendants the opportunity to investigate and address the claims, one of the purposes of the tort claims notice.

Plaintiffs argue that their notices "substantially complied" with the statutory requirements by providing defendants with "enough relevant information for the time, place, and circumstances" to undertake an investigation. Citing *Urban Renewal Agency v. Lackey*, 275 Or 35, 40, 549 P2d 657 (1976), plaintiffs argue that substantial compliance is all that is required. They also argue that sufficiency of a tort claims notice "must be determined with the object of the statute in mind, and technically deficient claims should not be barred where the purpose of the statute is served." *Brown v. Portland School Dist. #1*, 291 Or 77, 81, 628 P2d 1183 (1981). In an *amicus* brief, the League of Oregon Cities (LOC) counters that "substantial compliance" is only intended to protect would-be plaintiffs from "technical traps" that

make providing notice and filing claims too onerous, such as the wrong mailing method that the claimant employed in *Brown*. In LOC's view, the requirement to provide information regarding time, place, and circumstances, "so far as known to the claimant," is not such a technical requirement.

Assuming without deciding that the standard is substantial compliance with the requirements of ORS 30.275(4)(b), the *Moore* plaintiffs' tort claim notices still fell short. As all parties acknowledge, an important purpose of the notice requirement is "to give the public body timely notice of the tort and allow its officers an opportunity to investigate the matters promptly and ascertain all the necessary facts." *Urban Renewal*, 275 Or at 41. Given that purpose, at a minimum, a tort claims notice must supply sufficient information about an alleged tort to "allow the public body an opportunity to investigate the alleged tort promptly and ascertain the facts before they become stale." *Humphrey v. OHSU*, 286 Or App 344, 352, 398 P3d 360 (2017). Here, none of the tort claims notices in *Moore* provided sufficient information for that purpose.

Each notice named the relevant plaintiff(s) and indicated that "a claim for damages is, or will be, asserted against Portland Public Schools and/or one or more of its officers, employees, or agents." The notices list the general "potential claims" that may be brought and indicate that those claims are based on the "appalling behavior by Portland Public Schools," including, for example, subjecting plaintiffs "to daily sexual and physical assault and battery without recourse or ways to report the attacks or to create a safe space." As for the time or times when that was occurring, the notices did not pinpoint specific days, but specified that assaults occurred "daily." Ferrer-Burgett's notice also described that the events occurred over the past two years and Moore's notice stated that the events occurred over several years. Those specifications provided the timeframe for defendants and met a substantial compliance standard, considering that plaintiffs notified defendants of "daily" assaults and defendants, by virtue of the OTCA, knew that plaintiffs had to give notice within 180 days after the tort occurred.

However, plaintiffs' tort claim notices failed to specify the places and circumstances of the alleged torts. Only the tort claims notice from Ferrer-Burgett indicated which school or schools were involved, and none refer to student conduct or any specific event or action taken by anyone. A reader of the notices would not be able to discern the perpetrator or perpetrators of the alleged assaults, the physical locations of the alleged assaults, and who from PPS was involved in subjecting plaintiffs to the students' assaults. Apart from giving defendants information about who they might contact to learn more about the basis for the clams, the tort claims notices did not provide sufficient facts about the places and circumstances of the underlying events to give defendants "an opportunity to investigate the alleged tort promptly and ascertain the facts." *Humphrey*, 286 Or App at 352. Although a tort claims notice is not designed to be a comprehensive account of events on which a claim is based, the legislature intended the statutory requirements to be met: "No action * * * shall be maintained unless notice of claim is given as required by this section." ORS 30.275(1).

Because the formal notice requirements were not met in *Moore*, defendants did not receive advance notice, for purposes of the 180-day notice requirement, until plaintiffs commenced this action. *See* ORS 30.275(1) (requiring advance notice of tort claims); ORS 30.275(2) (providing 180-day statute of limitations); ORS 30.275(3) (permitting notice by, among other things, a tort claim notice or commencement of an action). We affirm the trial court's ruling granting defendants' motion to dismiss claims based on conduct occurring more than 180 days before the filing of the complaint, based on inadequacy of the formal tort claims notices by plaintiffs in *Moore*.

B.  *Whether Plaintiffs Stated Claims for Battery Against PPS*

We turn to plaintiffs' contention that they stated battery claims against PPS. Our review is for legal error. *Bohr v. Tillamook County Creamery Assn.*, 321 Or App 213, 217, 516 P3d 284 (2022). In conducting that review, we accept the allegations in the complaint as true, as well as any reasonable inferences that can be drawn from those allegations,

viewing those allegations and inferences in the light most favorable to plaintiffs, the non-moving parties. *Id.*

To establish a civil battery claim in Oregon, the plaintiff must prove that the act that brought about the harm is "an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact or put the other party in apprehension thereof." *Doe v. Lake Oswego School District*, 353 Or 321, 329, 297 P3d 1287 (2013). Harmful contact "includes physical impairment, physical pain, or illness." *Id.* at 330. Offensive contact is "contact that offends a reasonable sense of personal dignity." *Id.* Plaintiffs in both cases contend that PPS is liable for battery committed by third-party actors, the students.

Plaintiffs in *Moore* alleged that "PPS intended to cause a harmful or offensive physical contact or cause an apprehension that harmful or offensive physical contact would occur"; "PPS knew" that plaintiffs "were the victims of assault and battery to their persons on an ongoing basis due to their constant reporting to school administrators and the district administration"; "PPS did not follow up on Plaintiffs' reports of assault and battery, nor offer Plaintiffs any support, solutions, training, protective gear, or any assistance of any kind"; plaintiffs were harmed "by the offensive physical contact of the students"; and "a special relationship" existed between PPS and the students and between PPS and plaintiffs. Plaintiff in *Demma* made the same kinds of allegations.

In moving for dismissal, defendants characterized plaintiffs' battery claims as asserting an "'aiding and assisting' theory of battery" as described in *Walthers v. Gossett*, 148 Or App 548, 553, 941 P2d 575 (1997). Defendants argued that plaintiffs had failed to plead a viable aiding-and-assisting claim of battery because they had failed to allege (1) that the defendant "engaged in acts that facilitated another's torts, with the intent or knowledge that tortious conduct would occur," and (2) that the battery served a "purpose of the corporation or [was within] the nature of the acts the employees of the corporation are hired to perform." *Walthers*, 148 Or App at 558.

In response to defendants' motion in *Moore*, plaintiffs argued that their battery claim was sufficient, because they had alleged the following facts: that defendants (1) were aware of, allowed, and condoned physical and sexual violence against plaintiffs by students; (2) chose to continue to expose staff, including plaintiffs, to interactions with violent students knowing that these interactions would result in injury; (3) purposefully did not put in place any safety protections against the offensive and harmful contact it knew had occurred in the past and would continue to occur; (4) knew that plaintiffs continued to be exposed to harmful and offensive contact from violent students and did nothing to protect plaintiffs from the offensive or harmful contact; and (5) ignored plaintiffs' repeated requests for help from defendants, including repeated requests for safety gear, reporting systems, training, and any other help defendants could give, leaving plaintiffs with options to stay and be battered or lose their jobs. Plaintiffs also alleged that they have a special relationship with PPS. Plaintiffs argued that those allegations established "that it was foreseeable that Defendants' intentional acts," such as refusal to put in place safety precautions and to investigate claims of assaults, would result "in continued assaults and battery to Plaintiffs' persons." Plaintiffs argued that the tort of battery does not require the defendant to be the one who actually engages in the offensive contact, citing *Denton v. Arnstein*, 197 Or 28, 250 P2d 407 (1952); *Friedrich v. Adesman*, 146 Or App 624, 934 P2d 587 (1997); and *Brown v. Far West Federal*, 66 Or App 387, 674 P2d 1183 (1984).

Demma filed a shorter version of the response that plaintiffs in *Moore* had filed to argue that her allegations stated a battery claim. She asserted that the allegations established that PPS employed her and "directed her work and the tasks she performed," that she was "forced to endure violent students' offensive and harmful conduct" as a consequence, and that OSHA investigated and found that PPS had failed to investigate injuries to prevent reoccurrence, thereby indicating that PPS intended plaintiff to be repeatedly attacked and injured.

Plaintiffs' allegations suggest two theories for holding PPS liable, and plaintiffs have argued in support of those theories on appeal. First, citing *Olsen v. Deschutes County*, 204 Or App 7, 127 P3d 655, *rev den*, 341 Or 80 (2006), plaintiffs contend that PPS can be held directly liable, through joint liability, for tortious conduct by the students.

That theory requires PPS's breach of duty and its substantial assistance or encouragement to the students who physically or sexually assaulted plaintiffs. In *Olsen*, the plaintiffs worked at a county respite care facility for the mentally ill, caring for clients and assisting mental health professionals. *Id.* at 9. One of the plaintiffs sued for assault after the county admitted a known violent and aggressive client to the facility who charged her in a threatening manner. *Id.* at 25. We explained that, under *Granewich v. Harding*, 329 Or 47, 985 P2d 788 (1999), and the *Restatement (Second) of Torts* section 876 comment b (1979), a defendant may be liable for another's tort when the defendant knows that the other's "conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Olsen*, 204 Or App at 26. We rejected the defendant's contention that the trial court had erred in denying its motion for directed verdict, concluding that the evidence permitted the jury to determine that, by retaining the client and "providing him with potential victims and the opportunity to do harm, defendant, through its agents, intentionally attempted to inflict harm on plaintiffs." *Id.* at 25-26.

Similar to the facts in *Olsen*, the allegations in these cases include that PPS knew that students were physically aggressive or violent and committing battery against plaintiffs, had the authority to control the students and protect plaintiffs but failed to take any corrective action, and intended to cause the harmful or offensive physical contact. In her briefing, plaintiff Demma argues that the allegations in her workers' compensation and whistleblower retaliation claims that defendants retaliated against her by "purposely placing violent students in her classrooms" further support her battery claim. Taking those allegations as true for purposes of a motion to dismiss, we conclude that plaintiffs

adequately pleaded their theory that PPS is directly liable for battery.

Plaintiffs also seek to hold PPS vicariously liable for batteries committed by students. Plaintiffs point out case law—for example, *Vernonia Sch Dist 47J v. Acton*, 515 US 646, 655-56, 115 S Ct 2386, 132 L Ed 2d 564 (1995)—in which courts have observed that schools act "*in loco parentis*" for some purposes when students are in their care during the school day. Based on that common-law recognition of the "*in loco parentis*" status of schools, plaintiffs argue that we should hold that PPS is vicariously liable for the alleged batteries committed by students in PPS classrooms, whether or not PPS is directly liable based on its own actions and inactions.[3]

For three reasons, we are not persuaded that a school district's "*in loco parentis*" relationship with students, as described in the case law cited by plaintiffs, makes the district vicariously liable for intentional torts committed by students. First, we have located no case holding that a school district's *in loco parentis* relationship with its students makes the school district vicariously liable for batteries or other intentional torts committed by students against school employees. Our cases addressing the *in loco parentis* relationship between schools and their students have treated the relationship as one that imposes on the school district a duty to protect and safeguard students, not one that would make a school district vicariously liable to school employees for the torts of students. *See Pangle v. Bend-Lapine School District*, 169 Or App 376, 395, 10 P3d 275, *rev den*, 332 Or 558 (2000) ("School personnel act in a surrogate parent role, insofar as student safety on high school campuses is concerned."); *Jamshidnejad v. Central Curry School Dist.*, 198 Or App 513, 522-23, 108 P3d 671 (2005) (same). Although we have recognized that a school standing *in loco parentis* may have a right to control a minor child by detaining or confining them, that duty flows from the school's obligation to provide appropriate educational opportunities in a safe

---

[3] Plaintiffs also brought a negligence claim against PPS, alleging negligent failure to protect plaintiffs from assaultive conduct by students. The trial court dismissed that claim under ORS 30.265(6)(a) on the ground that the workers' compensation scheme supplied plaintiffs with their exclusive remedy. The dismissal of that claim is not at issue on appeal.

environment for its *students*. *See Simms v. School Dist. No. 1*, 13 Or App 119, 124, 508 P2d 236, *rev den* (1973) (discussing common law rule that teachers are not civilly liable for using reasonable physical punishment to address student misconduct); *see also Jamshidnejad*, 198 Or App at 522-23 (citing *Pangle* to discuss school's right to control student speech in furtherance of the "school's educational mission"). Nothing in our case law suggests that a school's *in loco parentis* relationship with its students imposes an obligation on it to protect *employees* from students in a way that would make the school district vicariously liable for the torts of students committed against school employees.[4]

Second, plaintiffs' proposed approach would result in a school, acting *in loco parentis* under the common law, having more expansive vicarious liability for a child's torts than an actual parent. In general, at common law, "a parent is not liable for the torts of the child unless the parent directed or ratified the act, took the benefit of it, or the child acted as a servant of the parent." *Davis v. DuBosch*, 283 Or 363, 366, 583 P2d 1133 (1978). Plaintiffs have not supplied a justification for holding PPS vicariously liable when the common law would not recognize vicarious parental liability under the circumstances present here.

Third, plaintiffs' proposed rule is at odds with choices the legislature has made regarding parental liability for a child's torts. The legislature has—in a limited way—abrogated the common-law rule regarding parental liability for children's torts. In part, ORS 30.765(1) provides that

> "the parent or parents of an unemancipated minor child shall be liable for actual damages to person or property caused by any tort intentionally or recklessly committed by such child. However, a parent who is not entitled to legal custody of the minor child at the time of the intentional or reckless tort shall not be liable for such damages."

ORS 30.765(1). The statute then caps parental liability at $7,500. The legislature could have enlarged the scope of

---

[4] Plaintiffs have not developed an argument, in line with their allegation, that some "special relationship" between PPS and plaintiffs (as opposed to one between PPS and students) makes PPS vicariously liable for the torts of the students.

parties liable for a child's intentional tort beyond parents having legal custody of the child, including those acting *in loco parentis*, but it did not. The legislature's express but narrow abrogation of the common-law rule of parental immunity for parents with legal custody is inconsistent with plaintiffs' expansive view of vicarious liability for a school district. Adopting plaintiffs' proposed rule of law would lead to the anomalous result of a school district being vicariously liable for a student's torts because of its parent-like relationship with the student at school when the legislature has retained the common-law rule of parental immunity for actual parents who do not have legal custody of their children. Accordingly, we hold that a school district's *in loco parentis* relationship with a student does not make the district vicariously liable for a student's torts committed while the student is under the district's supervision.

The trial court erred in dismissing the entirety of plaintiffs' battery claims for failure to state a claim upon which relief can be granted. Plaintiffs in *Moore* and *Demma* adequately alleged battery claims against PPS based on their theory of PPS's direct, as opposed to vicarious, liability.

C.   *Timeliness of Plaintiffs' Battery and Disability Discrimination Claims*

As noted, all plaintiffs asserted battery claims against PPS. Plaintiff Conley asserted a claim for disability discrimination. The trial court concluded that those claims were untimely insofar as they extended beyond 180 days before the complaints were filed. Plaintiffs assign as error the trial court's dismissal of plaintiffs' claims for battery and disability discrimination on those grounds. As pleaded, according to plaintiffs, the facts underlying the claims show a continuing pattern of conduct within the relevant time period, which allows for allegations outside the 180-day limitation period to form the basis of the claim under the continuing tort doctrine. We address the battery claims and the disability discrimination claim separately.

1.   *Battery claims*

We reject the application of the continuing tort doctrine to plaintiffs' battery claims. Discrete instances of

battery that are "separately actionable and not merely an element of a single tort," *see Griffin v. Tri-Met*, 112 Or App 575, 581-82, 831 P2d 42 (1992), *aff'd in part and rev'd in part on other grounds*, 318 Or 500, 870 P2d 808 (1994), even if an ongoing pattern of abuse can be shown, *see Davis v. Bostick*, 282 Or 667, 671-72, 580 P2d 544 (1978), do not fit within the characterization of a continuing tort.

In *Davis*, the Supreme Court agreed with the defendant that individual acts of assault and battery that occurred outside the limitation period could not be considered part of a continuing tort, even though the plaintiff had alleged an ongoing pattern of physical and mental abuse. 282 Or at 671-72. The court explained that a separate cause of action "certainly could have been asserted" after each of the defendant's earlier acts; they "were discontinuous in the sense that each had a beginning and an end, each was separated from the next by some period of relative quiescence, and each was capable of producing compensable harm." *Id.* at 673. Although the acts could be viewed as a continuous course of conduct, the court concluded that a continuing tort theory based on a course of tortious, discrete acts could not defeat the statute of limitations. *Id.* at 673-74; *accord Barrington v. Sandberg*, 164 Or App 292, 296, 991 P2d 1071 (1999) ("A continuing tort is based on the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." (Internal quotation marks omitted.)).

Accordingly, the trial court in *Moore* correctly rejected plaintiffs' argument that their battery claims were based on a continuing tort theory. Plaintiffs alleged multiple, separate instances of battery, not a continuing tort. Any battery claims that occurred more than 180 days before the filing of the relevant complaint were properly dismissed. For that reason, we affirm the dismissal of plaintiff Ferrer-Burgett's battery claim; all of Moore's claims of battery that occurred before May 5, 2018; and all of Gamez's, Weaver's, Conley's, Meskimen's, Gonci's, and Manzella's claims of battery that occurred before August 1, 2018.

2.  *Disability discrimination claim*

For her disability discrimination claim, Conley contends that she initiated her accommodation request in

June 2018, with multiple attempts to engage in the interactive process with PPS for weeks thereafter with no response. She argues that her allegations fell within the 180-day period preceding the filing of the amended complaint (that is, on or after August 1, 2018). Conley argues that her disability discrimination claim did not accrue upon filing the accommodation form, but rather, when PPS failed to engage, on a continuing basis, in the interactive process required by law.

We accept the following allegations as true. Conley submitted an accommodation request on June 14, 2018. She received a receipt confirmation on June 21, 2018, but never received any other communications regarding her request. Conley "reached out to human resources and her union multiple times over the next few weeks, but never heard back," and she eventually "[took] matters into her own hands" and found another job within the district in the fall. Furthermore, "[b]etween September and December of 2018, Plaintiff Conley had been called dozens of times as a backup [in special education classrooms]. She continues to be assaulted. Because she never received a response from PPS to her request for accommodation, she must still endure the physical violence." The complaint does not state at what point Conley believed that her accommodation request was being ignored such that it amounted to disability discrimination due to failure to accommodate her disability, or exactly when Conley looked for and secured an alternative job in the district.

The unlawful employment practice alleged is premised on the employer's failure to engage in the interactive process preliminary to determining a reasonable accommodation and the employer's failure to accommodate an employee's disability. *See, e.g.*, ORS 659A.112(2)(e) (an employer commits disability discrimination if the employer "does not make reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability," unless "the accommodation would impose an undue hardship"); OAR 839-006-0206(4) ("Once a qualified employee * * * has requested reasonable accommodation * * *, the employer has a duty to initiate a meaningful interactive

process with the employee *** to determine whether reasonable accommodation would allow the employee *** to perform the essential functions of a position held."); OAR 839-006-0206(6) (failure to engage in the interactive process is "a failure to reasonably accommodate"). Thus, the claim does not accrue on the date the employee first requests accommodation.

Instead, PPS's ongoing failure to comply with the disability discrimination law, as Conley alleged, gives rise to questions about when her claim accrued. As is the case here, when an employer ignores a request for accommodation and the employee does not allege an accrual date of the claim, the face of the complaint may not establish exactly when the claim accrued. In theory, it might have been possible for defendants to argue that Conley knew that PPS had effectively denied her request for accommodation when she looked for another job, but that date does not appear on the face of the complaint either. Moreover, Conley alleged that PPS failed to accommodate her disability during the limitation period, when it assigned her to work as a backup in special education classrooms in the last four months of 2018.

In sum, the facts stated in Conley's complaint do not establish that her claim accrued before August 1, 2018. Accordingly, the trial court erred in dismissing her disability discrimination claim as untimely.

D.  *Whether Plaintiffs Stated a Hostile Work Environment Claim*

The *Moore* plaintiffs' employment discrimination claim based on a hostile work environment theory is grounded on sex discrimination. Defendants moved to dismiss on two grounds. First, they argued, plaintiffs had failed to allege ultimate facts stating a hostile work environment claim based on sex, because the alleged sex discrimination was controverted by plaintiffs' own allegations that the special needs students indiscriminately assaulted both male and female school personnel and that PPS allegedly failed to act on complaints by all the school personnel. Plaintiffs responded that they had adequately pleaded the claim, relying on allegations that they were female, they were subjected

to assaults and harassment based on their sex, and defendants knowingly failed to remedy their working conditions. The trial court agreed with defendants that the allegations did not support a sex discrimination claim based on a hostile work environment theory.

Second, defendants challenged the timeliness of the events supporting the claims, arguing that those events had to occur within 180 days of the commencement of their action. Plaintiffs responded that the claim was based on a continuing tort, a theory that the court rejected.[5] The trial court then entered an order dismissing plaintiffs' second claim for relief for timely allegations (those that arose within the operative 180-day period preceding the filing of the complaint), because plaintiffs had "failed to state ultimate facts sufficient to constitute a hostile work environment claim" based on sex.

On appeal, plaintiffs do not challenge the trial court's explicit rejection of their continuing tort theory as to the hostile work environment claims and instead assign "as error the trial court's dismissal of their [ORS] 659A.030 claim based on the incorrect interpretation of the law such that female employees who are sexually assaulted at work where male employees may also have been sexually assaulted cannot maintain a claim for a hostile work environment based on sex." Thus, we address whether plaintiffs in *Moore* sufficiently alleged a sex discrimination claim based on a hostile work environment theory, reviewing the trial court's ruling granting defendants' motion under *former* ORCP 21 A(8) for legal error. *Moser v. Mark*, 223 Or App 52, 55, 195 P3d 424 (2008). We conclude that they did.

In part, ORS 659A.030(1)(b) provides that it is "an unlawful employment practice" for "an employer, because of an individual's *** sex *** to discriminate against the individual in compensation or in terms, conditions or privileges of employment." The Bureau of Labor and Industries (BOLI) has issued workplace-discrimination rules establishing that sexual harassment is a form of unlawful

---

[5] *But see generally National Railroad Passenger Corp. v. Morgan*, 536 US 101, 122 S Ct 2061, 153 L Ed 2d 106 (2002) (holding that the continuing violation doctrine applies to hostile work environment claims under Title VII if one act of harassment occurred within the statutory period).

discrimination on the basis of sex under ORS 659A.030. *See* OAR 839-005-0030(1) (implementing ORS 659A.030); OAR 839-005-0021(2) ("Discrimination because of sex includes sexual harassment[.]"); *Fred Meyer, Inc. v. BOLI*, 152 Or App 302, 307, 954 P2d 804 (1998) ("By administrative rule, BOLI has determined that sexual harassment is a form of gender discrimination."). BOLI's approach is consistent with federal case law construing Title VII, in which the general prohibition against sex discrimination in employment has similarly been held to encompass sexual harassment. *See, e.g.*, *Meritor Savings Bank, FSB v. Vinson*, 477 US 57, 64-65, 106 S Ct 2399, 91 L Ed 2d 49 (1986) (explaining that sexual harassment is a form of sex discrimination prohibited by Title VII); *H. K. v. Spine Surgery Center of Eugene*, 305 Or App 606, 611, 470 P3d 403 (2020), *rev den*, 367 Or 826 (2021) (Oregon courts look to federal cases construing Title VII of the federal Civil Rights Act for guidance in construing ORS 659A.030, because its predecessor, *former* ORS 659.030, *renumbered as* ORS 659A.030 (2001), was modeled after that act.).

BOLI describes the types of conduct that constitute sexual harassment in OAR 839-005-0030(1), as follows:

"(a)   Unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature when such conduct is directed toward an individual because of that individual's sex and:

"(A)   Submission to such conduct is made either explicitly or implicitly a term or condition of employment; or

"(B)   Submission to or rejection of such conduct is used as the basis for employment decisions affecting that individual.

"(b)   Any unwelcome verbal or physical conduct that is sufficiently severe or pervasive to have the purpose or effect of unreasonably interfering with work performance or creating a hostile, intimidating or offensive working environment."

The guidance in OAR 839-005-0030(1)(b) does not limit sexual harassment to unwelcome conduct that targets only members of one sex, which is consistent with case law addressing the same concept under Title VII.

The Ninth Circuit Court of Appeals, for example, has held that it is error to conclude that harassing conduct is not "because of sex" under Title VII of the Civil Rights Act of 1964, the analogous federal civil rights statute, merely because the abuser "consistently abused men and women alike." *Steiner v. Showboat Operating Co.*, 25 F3d 1459, 1463 (9th Cir 1994). Other circuits that have considered the question agree. *See, e.g.*, *Petrosino v. Bell Atl.*, 385 F3d 210, 221 (2d Cir 2004) (exposure of sexually offensive material to both male and female employees does not prevent a woman from establishing evidence of a hostile work environment based on sex); *Burns v. Johnson*, 829 F3d 1, 17 (1st Cir 2016) (similar); *see generally Sharp v. S&S Activewear, L.L.C.*, 69 F4th 974, 979-81 (9th Cir 2023) (collecting and discussing cases in which the employer exposed all employees to music or other auditory programming with offensive gender-specific or sexual references). And in *Bostock v. Clayton Cty.*, ___US___, ___, 140 S Ct 1731, 1741, 207 L Ed 2d 218 (2020), the United States Supreme Court rejected the "equal opportunity discrimination" argument, stating that it is no "defense for an employer to say it discriminates against both men and women because of sex." In other words, the Court explained, how others in the same environment are treated based on sex is immaterial to whether the treatment of a single individual is based on that individual's sex. *See id.* at 1740-42.

Those federal cases are persuasive. We conclude that a plaintiff alleging discrimination because of sex prohibited by ORS 659A.030(1)(b) need not establish that the employer only discriminated against members of the plaintiff's sex in order to establish a hostile work environment claim and that allegations of an offensive work environment for all employees is not fatal to plaintiffs' claim.

In a recent case involving harassment that included sexual touching, we explained that, to prove the existence of a hostile working environment due to sexual harassment, a complainant must establish that the employee was subjected to verbal or physical conduct of a sexual nature, the conduct was unwelcome, and the conduct was "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Frehoo, Inc.*

*v. BOLI*, 319 Or App 548, 558, 510 P3d 888 (2022), *rev den*, 370 Or 789 (2023) (quoting *Fuller v. City of Oakland*, 47 F3d 1522, 1527 (9th Cir 1995)). And if a hostile work environment is established, an employer may be held liable for the harassment on any of the grounds set forth in OAR 839-005-0030(3) to 839-005-0030(9). *Frehoo*, 319 Or App at 559.

Here, plaintiffs allege both sexual and sex-based nonemployee harassment. Sexual harassment by nonemployees is described in OAR 839-005-0030(7) as follows:

"An employer is liable for sexual harassment by nonemployees in the workplace when the employer or the employer's agents knew or should have known of the conduct unless the employer took immediate and appropriate corrective action. In reviewing such cases the division will consider the extent of the employer's control and any legal responsibility the employer may have with respect to the conduct of such non-employees."

Thus, BOLI recognizes that employers can be held liable for harassing conduct by certain nonemployees when the employer knew or should have known of the conduct and failed to take immediate and appropriate corrective action. *See also Campbell v. State of Hawaii Dept. of Education*, 892 F3d 1005, 1017 (9th Cir 2018) ("[Employer] may be held to account for the students' actions only if, after learning of the harassment, it failed to take prompt corrective measures that were 'reasonably calculated to end the harassment.'").

In this case, plaintiffs alleged a claim against all defendants for "Hostile Work Environment - ORS 659A.030." Plaintiffs alleged:

"Defendant PPS subjected the female Plaintiffs to a hostile work environment through its continued misconduct in its treatment of Plaintiffs. Defendant PPS engaged in a pattern and practice of ignoring and condoning sexual, physical, and verbal abuse to Plaintiffs' persons. The condoned conduct against Plaintiffs was pervasive, severe, offensive, and outrageous.

"Defendant PPS' actions had the purpose and effect of creating an intimidating, hostile, and offensive working environment, and had the effect and purpose of unreasonably interfering with Plaintiffs' work, safety, and wellbeing.

"Throughout the many complaints of harassment and assaults, Defendants Pearson, LaFramboise, Stubbs, and Porter-Lopez failed to properly investigate, failed to take appropriate action to prevent harm to Plaintiffs, ignored their requests for assistance and protective gear, failed to properly train the Plaintiffs and instead aided, abetted, and incited the assaults."

Plaintiffs also alleged that defendants had caused plaintiffs damages.

In context (plaintiffs had already alleged at length the kinds of assaults they suffered at the hands of students), plaintiffs' allegations state ultimate facts establishing a claim of sex discrimination based on a hostile work environment in which the employer may be held liable for nonemployee harassment. Plaintiffs alleged that students engaged in "sexual, physical, and verbal abuse"; that PPS was aware of the abuse; that PPS condoned and ignored the abuse and failed to take appropriate action in response to their complaints; that the abuse was offensive and interfered with plaintiffs' work, safety, and wellbeing; and that the individual defendants aided, abetted, and incited assaults. Although plaintiffs did not state that the discrimination was "because of sex," they noted their protected class (that they were female), and both the court and defendants were or became aware that that was the basis for their claim. The trial court erred in dismissing the hostile work environment claims based on allegations of harassing or otherwise offensive conduct within the 180-day period before the claim was asserted in this case.

E.  *Dismissal of Individual Defendants and Substitution of PPS*

Finally, we address plaintiffs' contention in *Moore* that the trial court erred by substituting the public body, PPS, for all individual defendants. The court determined that under ORS 30.265(3) of the OTCA, the public body was the appropriate defendant and required substitution in all claims. Again, our review is for legal error, assuming the truth of all well-pleaded facts and giving plaintiffs the benefit of favorable inferences. *Kilminster v. Day Management Corp.*, 323 Or 618, 621, 919 P2d 474 (1996).

In Oregon, if a tort action "alleges damages in an amount equal to or less than the damages allowed under [the OTCA], the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action against the public body." ORS 30.265(3).[6] In such situations, "the court upon motion shall substitute the public body as the defendant." *Id.* Concomitantly, the public body has a duty to "defend, save harmless and indemnify" an employee "against any tort claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of duty." ORS 30.285(1). That duty, however, "do[es] not apply in case of malfeasance in office or willful or wanton neglect of duty." ORS 30.285(2).

Plaintiffs do not dispute that the damages they seek are "in an amount equal to or less than the damages allowed under ORS 30.271." ORS 30.265(3). They challenge the application of ORS 30.265(3) because, in their view, their claims against the individual defendants contain some allegations indicating that their conduct did not fall within "the scope of their employment or duties." Plaintiffs did not allege expressly that the individual defendants had acted outside the course and scope of their employment. However, plaintiffs explained to the trial court that

"the assumption from the information that we have is that they were making decisions that did not [comport] with what they were supposed to do in the course and scope of their employment, which was creating safe classrooms,

---

[6] In full, ORS 30.265(3) provides:

"If an action under ORS 30.260 to 30.300 alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, *the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties* and eligible for representation and indemnification under ORS 30.285 or 30.287 *is an action against the public body.* If an action is filed against an officer, employee or agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, *the court upon motion shall substitute the public body as the defendant.* Substitution of the public body as the defendant does not exempt the public body from making any report required under ORS 742.400."

(Emphases added.)

making sure that students were safe, making sure that their employees were safe and whatever else is in the job description."

On appeal, they contend that their allegations of aiding, abetting, or inciting battery, of retaliation and discrimination, and of other unlawful abuses could establish that the individual defendants had not acted in the course and scope of their employment.

Defendants respond by comparing plaintiffs' allegations to the factors that are used to determine whether an employee acted within the scope of employment, including the motivation behind the individuals' alleged conduct. Three requirements must be met to establish that an employee's conduct was within the scope of employment: (1) the conduct must have occurred substantially within the time and space limits authorized by the employment; (2) the employee must have been motivated, at least partially, by a purpose to serve the employer; and (3) the act must have been of a kind that the employee was hired to perform. *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988). In defendants' view, plaintiffs do not allege facts indicating that the individuals "were not motivated to serve their employer or that the allegations [do not] relate to the service the officials were required to perform." Thus, defendants assert, the trial court correctly substituted PPS for the individual defendants as a matter of law.

Whether conduct is within the scope of a person's employment for the purposes of ORS 30.265(3) is a question of fact, "except in cases where only one reasonable conclusion may be drawn from the facts pled." *Fearing v. Bucher*, 328 Or 367, 374, 977 P2d 1163 (1999); *Johnson*, 272 Or App at 717 ("Whether a particular act is within the scope of employment is to be decided on its own particular facts and circumstances by the trier of fact[.]"). However, to reach that question of fact, plaintiffs' complaint must allege ultimate facts that, if true, are "sufficient to establish" that the individual defendants' acts were outside the scope of their employment and "resulted in the acts that caused injury to plaintiff." *Fearing*, 328 Or at 374; *see also* ORCP 18 A ("A pleading which asserts a claim for relief *** shall contain *** [a]

plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition."). Conclusions of law alone are insufficient. *Fearing*, 328 Or at 371.[7]

In *Fearing*, the Supreme Court considered whether the plaintiff's complaint contained sufficient allegations that an individual defendant's conduct was within the scope of his employment and arguably resulted in the acts that caused the plaintiff's injury such that liability could be imputed to the defendant's employer. To make that determination, the court explained, the complaint needed to "contain[ ] allegations sufficient to satisfy all three *Chesterman* requirements for establishing that employee conduct was within the scope of employment." *Id.* at 375-76.

The instant case involves the negative of the scope of employment issue in *Fearing*. Here, rather than alleging facts relating to whether a defendant's conduct *was* within the scope of employment, plaintiffs here must allege ultimate facts that could permit a factfinder to conclude that defendants' conduct *was not* within the scope of their employment. And as in *Fearing*, plaintiffs are required to allege ultimate facts that, if true, permit the finding that defendants' conduct caused or led to actions that caused plaintiffs' injuries. *See id.* at 374 ("[W]e must consider whether the allegations contained in the amended complaint state ultimate facts sufficient to establish that acts that were within [defendant's] scope of employment resulted in the acts that caused injury to plaintiff.").

Plaintiffs' allegations concern four individuals, at all material times employees of PPS: Mary Pearson, Senior Director of Special Education; Theresa Stubbs, Vice Principal of the Pioneer Program; Michael LaFramboise, Principal of the Pioneer Program; and Andrea Porter-Lopez, Principal at Woodlawn Elementary School. All four individuals were named as defendants in plaintiffs' first and second claims for relief for battery and a hostile work environment, respectively.

---

[7] As *Fearing* illustrates, a pleading concerning whether a party acted within the course and scope of employment can be challenged by way of a motion to dismiss. Accordingly, we reject plaintiff's procedural argument to the contrary.

Plaintiffs make various allegations throughout their complaint that concern each individual defendant, but almost all of them relate directly to defendants fulfilling their respective roles as a PPS employee. For example, plaintiffs allege that "Stubbs and LaFramboise [told plaintiffs] that their jobs would be in jeopardy if they answered the parents" when asked about their children, including "parents of unsafe students," because "they were not allowed to talk to students' parents." Allegations like those, if true, permit a factfinder to conclude that the defendants' conduct was a cause of plaintiffs' alleged injuries, but they describe conduct that necessarily involves defendants acting within their roles as public employees. Thus, those types of facts, on their own, are insufficient to allow a factfinder to conclude that defendants were not "motivated, at least partially, by a purpose to serve the employer." *Chesterman*, 305 Or at 442.

However, in addition to those kinds of allegations, plaintiffs also allege that, "[t]hroughout the many complaints of harassment and assaults," all four individual defendants "failed to take appropriate action to prevent harm to Plaintiffs, ignored their requests for assistance and protective gear, failed to properly train the Plaintiffs and instead aided, abetted, and incited the assaults." Those are allegations of ultimate facts:

> "An ultimate fact is a fact from which legal conclusions are drawn. A conclusion of law, by contrast, is merely a judgment about a particular set of circumstances and assumes facts that may or may not have been pleaded. Allegations of when particular conduct occurred, of the motivation behind that conduct, and of the employment-related nature of that conduct all are assertions of fact, which can be proved or disproved."

*Fearing*, 328 Or at 375 n 5 (citation omitted).

If true, those allegations could allow a factfinder to infer that defendants were not "motivated, at least partially, by a purpose to serve the employer." Furthermore, those allegations, if true, may allow a factfinder to infer that defendants' conduct "occurred substantially [outside] the time and space limits authorized by the employment" and that the conduct was not "of a kind which the employee was hired

to perform." *Chesterman*, 305 Or at 442. Finally, those allegations are sufficient, if true, permit a factfinder to conclude that the individual defendants engaged in conduct that was a cause of plaintiffs' alleged injuries. The trial court erred in granting defendants' motion and dismissing the individual defendants and substituting PPS in their stead.

Dismissal of *Moore* plaintiffs' First Claim, Count 2, for battery that occurred within the notice period reversed; dismissal of Demma's First Claim, Count 2, for battery reversed; dismissal of *Moore* plaintiffs' Second Claim for hostile work environment that occurred within the notice period reversed; dismissal of Conley's Fourth Claim for disability discrimination reversed; remanded for further proceedings; otherwise affirmed.